## STATE v. RUBE WILSON.

(Filed 4 December, 1918.)

1. **Appeal and Error—Objections and Exceptions—Briefs.**

Exceptions not insisted upon in appellant's brief will be deemed as abandoned on appeal.

2. **Evidence—Silence—Admissions—Larceny and Receiving—Criminal Law.**

The narration by a witness of circumstances, in the presence of the defendant on trial for receiving stolen goods, etc., tending to convict him of the offense, is not objectionable as attempting to show an admission, by his silence, of matters he was not required to deny, when the witness also testified that the defendant then admitted its truth, and at least harmless to the extent that he relied thereon by his own evidence in defense.

3. **Appeal and Error—Objections and Exceptions—Grounds Stated.**

On appeal, the appellant is restricted to the ground of objection to the admission of evidence he has given on the trial of the cause in the lower court.

4. **Appeal and Error—Objections and Exceptions—Evidence—Competent in Part.**

An objection to the admission of evidence that is competent in part, without particularizing and excepting to the incompetent part, is untenable on appeal.

5. **Receiving Stolen Goods—Larceny—Evidence—Appeal and Error—Harmless Error.**

Where, upon the trial for receiving stolen goods, there was evidence tending to show that the defendant's brother-in-law stole the goods and gave them to the defendant's wife and members of his household, and they were found in the attic of defendant's house and upon his person; that he knew where they were, but at first denied this knowledge, and relied in defense upon the theory that his wife's brother had given them to her in his absence, and that he did not know that they had been stolen: *Held,* the exclusion of testimony of the wife's mother, in whose house also some

of the stolen goods had been found, as to whether she had seen the stolen goods given to defendant's wife, is harmless and also immaterial, the fact not being controverted and all the evidence tending to show that the defendant and his wife were acting in collusion.

### 6. Receiving Stolen Goods—Larceny—Instructions—Scienter.

Where the charge of the judge, construed as a whole, is not prejudicial to the appellant's rights, it will not be held as reversible error on appeal; and where the appellant has been tried for receiving stolen goods, with evidence tending to show that he did so, knowing that they had been stolen, a charge to the jury in effect that they must find the ultimate fact of the defendant's knowledge beyond a reasonable doubt, with the burden of proof on the State, in order to convict him, and so emphasized that the jury could not have well misunderstood the instruction, though not repeated in other disconnected portions of the charge, is not reversible error as to the *scienter*.

### 7. Receiving Stolen Goods — Larceny — Evidence — Inquiry — Knowledge— Scienter.

Where there is evidence of such facts and circumstances as would put the defendant, tried for receiving stolen goods, upon such inquiry as would lead to knowledge that they had been stolen, the jury may infer that such knowledge had been obtained by him by proper inquiry, and so fined upon the question of *scienter*.

INDICTMENT for larceny and receiving stolen goods, knowing them to have been stolen, tried before *Cline, J.,* and a jury, at August Term, 1918, of YADKIN.

A quantity of goods was stolen from the Gilmer Bros. Company, of Winston-Salem, during the early spring of this year. Among the porters who worked at the store were Jim Houser and Hurley Houser, who lived in Yadkinville. The stealing had been going on for some months. Mr. Gilmer, the secretary-treasurer of the company, went with the officers to Yadkinville a Sunday later, provided themselves with search warrants, and found goods of the value of $500 or $600 which Mr. Gilmer identified as the property of his company. Among other houses in which they found a quantity of goods was that of Sant Houser, the brother of Jim, the father of Hurley and the father-in-law of the defendant, Rube Wilson. The defendant himself lived in a small one-room house in the same yard and about 40 feet from the house of Sant. In the defendant's house they found $50 or $60 worth of goods which Mr. Gilmer identified as coming from the store of his company. Rube Wilson's defense was that these goods were given to his wife by her brother, Hurley Houser, in his absence, and he had no reason to suspect that they were stolen, or that they were given to her by her brother.

The following circumstances were relied upon by the State as showing the guilty knowledge of the defendant:

1. When told by the witness, Thompson, that if he knew of any of the

goods being in his house, he had better tell about it and not conceal it, he replied that he would not try to conceal any stolen goods, but if he knew of any, he would tell the officers at once. He then turned off and went in his house.

2. Some ten or fifteen minutes afterwards the officers found most of the goods he is charged with receiving in the attic of his house, while he had concealed upon his person a silk shirtwaist identified by Mr. Gilmer as the property of his company.

3. The defendant's admission that he placed the goods in the attic because he wanted to hide them and he did not want to get in trouble.

All these and other circumstances in the case were submitted to the jury, and they found the defendant guilty of receiving the stolen goods.

Verdict of guilty, and judgment thereon. Defendant appealed.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*Benbow, Hall & Benbow and A. E. Holton for defendant.*

WALKER, J., after stating the case: The defendant's counsel, in their brief, do not insist on their exception to the refusal of the court to non-suit the State upon the evidence. This exception, then, will be taken as waived; but there being some evidence of guilt, the refusal to nonsuit was proper. *S. v. Carlson,* 171 N. C., 818.

We will now consider the assignments of error, in the order of their statement in the record:

1. The defendant objected to the following testimony of the witness, Thompson: "Rube denied any knowledge of this property until we caught the other parties, and Hurley Houser said he got the goods at Gilmer Bros. Company and turned over a good deal of it to his folks. It was in Winston that Hurley said that. Hurley said that he had given the coat to Rube's little boy and the waist to Rube's wife—that is the waist we got out from under Rube's jacket. Rube acknowledged that was the way it come. My recollection is that Rube said that he threw these articles up in the attic because he did not want to get in trouble; to hide them while we were searching Sant's house." The ground of objection was that this, though said in defendant's presence, did not call for a reply from defendant, and so could not be taken as an admission, he standing silent. This is a misapprehension of what occurred. The defendant did not remain silent, as the last clause quoted above shows: "Rube acknowledged that was the way it come." The latter part of the testimony was clearly competent, and even if the first part of it is incompetent, the objection must fail, as it was taken to the whole of it. *S. v. Ledford,* 133 N. C., 722; *Phillips v. Land Co.,* 174 N. C., 542, 545, and

48—176

cases cited. Besides, the last part of the evidence is what the defendant attempted to prove himself, as appears in the case. In any view, therefore, it was harmless, if there was any error. There was no doubt that Hurley Houser stole the goods at Winston from Gilmer Bros. Company, and the only question was whether defendant received them with knowledge that they were stolen. The defendant is restricted to the particular ground of objection stated in the court below, which is clearly untenable. *Bridgers v. Bridgers,* 69 N. C., 451; *Gidney v. Moore,* 86 N. C., 485; *Ludwick v. Penny,* 158 N. C., 104. It was held in the *Bridgers case* that "A party objecting to the introduction of evidence must state with certainty the points excepted to; and if the ground stated for such objection be untenable, it is error to reject the evidence, though inadmissible if properly objected to." And in *Gidney v. Moore,* 86 N. C., 485: "A general objection to obnoxious evidence will be sustained if upon any ground the evidence should be rejected; but where the ground of an exception can be inferred from the record, another cannot be assigned here, the ground of an exception being a part of the exception itself."

2. The defendant's mother was called as a witness, after it appeared from the evidence that a quantity of the stolen goods were found in her house. She was asked by defendant's counsel:

"Q. Did you see him give his wife anything? Did you see him bring anything else there?" (Objection by the State; objection sustained; defendant excepts.)

The defendant offered to show that the goods found at his house were given to his wife by her brother, Hurley Houser, in his absence. The exclusion of this evidence was harmless. It was admitted by both sides that the stolen goods were carried to the defendant's house by Hurley Houser. It also was immaterial, because, though some of the goods may have been delivered to his wife in his absence, if he received them on his return, knowing them to have been stolen, it would have made him just as guilty as though he had received them originally, as there was evidence from which the jury could have found that defendant and his wife were acting together under a previous arrangement, although the goods were actually delivered to her in his absence. The evidence was that they were carried there for the family, defendant being the head of the household. The theory of the State was that he assumed control over the property, whether delivered to his wife in his absence or not, hid it, denied having it, and otherwise showed guilty knowledge. *S. v. Stroud,* 95 N. C., 626; *Sanderson v. Commonwealth,* 8 Am. Crim. Rep., p. 687 and p. 691.

3. As to the *scienter.* The charge of the court must be read as a whole (*S. v. Exum,* 138 N. C., 599; *Kornegay v. R. R.,* 154 N. C., 389; *S. v. Orr,* 175 N. C., 773), in the same connected way that the judge is

supposed to have intended it and the jury to have considered it, and when thus read we find no reversible error. The judge told the jury several times, and especially in the last sentences of his charge, that the ultimate fact for them to find, beyond any reasonable doubt, was whether defendant received the goods knowing that they had been stolen, and the jury could not well have understood that this was not the vital fact in the case. He distinctly instructed them that they could not convict the defendant unless he received the goods "which he knew were stolen." There was strong evidence that he knew they had been stolen. His concealment of them in the attic of his house, and especially of the waist on his person, was convincing proof of his guilty knowledge, under the circumstances surrounding the concealment. There is really sufficient evidence of a conspiracy between all the parties to commit extensive robberies or stealings by wholesale quantities. It is quite impossible to believe that the defendant did not know how the goods were obtained, and that his generous relatives did not come by them honestly. That which a man in the defendant's position should have suspected, the jury had the right to infer that he did suspect, as far certainly as was necessary to put him on his guard and on his inquiries, and they might conclude, if they saw fit to do so under the evidence, that he had made the proper and usual investigation and discovered the facts, if he was not already cognizant of them. 2 Wharton Cr. Law (2d Ed.), p. 1449; *Collins v. State,* 73 Am. Dec., 426; *Comm. v. Finn,* 108 Mass., 466; *Frank v. State,* 67 Miss., 125; *S. v. Goldman,* 47 Atl. Rep. (N. J.), 641; *S. v. Adams,* Anno. Cases, 1914 B, p. 1109, where the correct principle is stated and illustrated.

The other exceptions are either formal or without any merit.

No error.