Criminal prosecution for larceny and for receiving stolen goods, knowing same to have been stolen.
On separate indictments, each charging two counts, (1) larceny, and (2) receiving stolen goods, C. S., 4250, consolidated for the purpose of trial, John Bell, Roscoe Gary, Will Stover, Charlie Rowe, and Lonnie Conner, respectively, were tried.
John Bell pleaded guilty. The other four pleaded not guilty. As to Rowe and Conner the case was submitted to the jury only on the second count.
On trial the evidence for the State tended to show that: In May, 1937, Maxwell Brothers and Morris, who operated a furniture store in Gastonia, missed numerous articles of household and kitchen furniture and *Page 669 
goods of value of about $2,500. Among the employees of the store at that time were John Bell, a white man, as delivery man, and Roscoe Gary and Will Stover, colored men, as helpers. When confronted by the manager, Bell admitted his guilt and implicated Gary and Stover in the stealing of the missing articles, which had been taken from time to time when making deliveries on orders for the store. The articles were sold and the money divided between the three. A part of the stolen goods, a living room suite, 2 wool rugs, an occasional table, and 2 linoleum rugs, worth $273.00, were found in the possession of the defendant Lonnie Conner.
Bell testified: "I took some stolen goods to Lonnie Conner and he paid me some money and gave me a little liquor. I did not tell him I had stole it. . . . I do not remember how much Lonnie Conner paid me for the goods he bought. He paid me at different times around $30.00 or $35.00. . . . I sold Lonnie a rug and a radio. He paid me $6.00 at one time for this. I did not talk to Lonnie about the goods after this. I was only a delivery man. I have known Lonnie Conner about a year and a half."
At the time the furniture was found in his possession, Conner stated to the sheriff and deputy sheriff and in the presence of Bell that he did not buy any furniture from John Bell.
The defendant offered testimony tending to show that: He did not buy from John Bell any of the stolen articles found in his possession, but that he had bought some furniture from the furniture salesman of Maxwell Brothers and Morris; that his wife was sick in bed and he took the salesman in to see her and she arranged for the furniture to be displayed, and if she liked it she would trade in her old furniture for it; that when it was delivered she accepted it and paid $104.50 for it; that the name of the salesman was Mr. Glenn, who is now in Charlotte, and defendant had tried to find him.
Mrs. Lonnie Conner testified in corroboration of her husband as to purchasing furniture from a Mr. Glenn at $104.50; that she did not buy the furniture from Mr. Bell; that Conner was not at home the day the furniture was delivered; and that she did not know the furniture came from Maxwell Brothers and Morris until her husband had her identify the boy sent up from the station.
Defendant further offered testimony tending to show that the linoleum rugs found in his possession were brought from Schrum Furniture Company. This Mr. Schrum corroborated.
In rebuttal, the State offered evidence tending to show that: John Bell did not deliver any furniture to Mrs. Conner; that he had never seen her before she came to court; that there was no Glenn Furniture Company salesman; that Maxwell Brothers and Morris did not have a *Page 670 
salesman named Glenn; and that the furniture was delivered to a room at the filling station.
The sheriff and deputy sheriff testified that Mrs. Conner did not make any statement about buying the furniture from a man named Glenn; that she stated she was sick in bed, and that she had traded the living room suite.
The manager of Maxwell Brothers and Morris store testified that he talked with Mrs. Conner; that she made no statement about buying furniture from a Mr. Glenn; but said she was sick and did not know who brought the furniture into the house when it was delivered. She said nothing about paying for it, and did not seem to know anything about it at all.
Verdict: Guilty.
Judgment: Twelve months in the common jail of Gaston County, to be assigned to work on the public roads of the State under the direction of the State Highway and Public Works Commission.
Defendant appeals to Supreme Court, and assigns error.
Tested by the well settled decisions of this Court, the evidence revealed in the present case is of sufficient probative force to be submitted to and for consideration of the jury, and to sustain the verdict. C. S., 4250. S. v. Wilson, 176 N.C. 751, 97 S.E. 496; S. v. Stathos,208 N.C. 456, 181 S.E. 273.
Objection to the form of the verdict is untenable. In S. v. May,132 N.C. 1020, 43 S.E. 819, based on bill charging two counts, Douglas,J., said: "It is evident from the record that the defendant was tried on the first count alone. As far as we can see, the entire evidence, judge's charge, and the argument of counsel referred only to that count, and we must, therefore, presume that the verdict followed the trial."
In S. v. Gregory, 153 N.C. 646, 69 S.E. 674, it is said: "The verdict should be taken in connection with the issue being tried, the evidence and the charge of the court."
The instant case was submitted to the jury only on the second count.
We have considered all other exceptions. We find
No error. *Page 671