STATE OF NORTH CAROLINA v. WILLIE LEE MURRY

No. 5

(Filed 14 October 1970)

1. Rape § 8— carnal knowledge of female under age of 12 — elements of offense

    The act of carnally knowing and abusing any female child under the age of 12 years is rape; neither force nor intent is an element of this offense. G.S. 14-21.

2. Rape § 8— carnal knowledge defined

    The terms "carnal knowledge" and "sexual intercourse" are synonymous; there is carnal knowledge or sexual intercourse in a legal sense if there is the slightest penetration of the sexual organ of the female by the sexual organ of the male.

3. Rape § 11— rape of 11-year-old girl — sufficiency of evidence

    In a prosecution charging defendant with the carnal knowledge of an 11-year-old girl, the State's evidence was positive as to each and every element of the crime.

4. **Criminal Law § 75— confession by 16-year-old boy — presence of officers**

In a prosecution charging a 16-year-old defendant with the rape of an 11-year-old girl, defendant's incriminating statements were not rendered inadmissible because of his youthful age; also, the mere fact that defendant made the statements in the presence of several police officers does not render the statements inadmissible, there being no evidence of mistreatment or coercion by the officers.

5. **Rape § 16— rape of 11-year-old girl — instructions**

In a prosecution charging a 16-year-old defendant with the rape of an 11-year-old girl, the fact that the trial court submitted to the jury an issue of defendant's guilt of an assault upon a female by a male person *over the age of eighteen years, held* not prejudicial to the defendant, where all of the evidence tended to show the completed crime of rape and there was no evidence warranting a guilty verdict of assault upon a female by a male person.

6. **Criminal Law § 115— instructions on lesser included offenses**

The statutes requiring the submission of defendant's guilt of a lesser included offense of the crime charged are applicable only when there is evidence tending to show that the defendant might be guilty of a lesser offense. G.S. 15-169, G.S. 15-170.

Justice LAKE did not participate in the consideration or decision of this case.

APPEAL by defendant from *Brewer J.,* January 5, 1970 Session of ROBESON Superior Court.

Defendant was indicted, arraigned and tried on a bill of indictment which charged that, on September 15, 1969, he "did unlawfully, willfully and feloniously ravish and carnally know Linda McMillan, a female, under the age of twelve years, to wit: eleven years of age, by force and against her will . . . . " At his arraignment and trial, defendant was represented by his court-appointed counsel, J. H. Barrington, Jr.

The only evidence was that offered by the State. A summary thereof is set forth below.

On September 15, 1969, Linda McMillan, an eleven-year-old girl, after school and after a visit to a doctor's office, went to Vardell Hall, Red Springs, N. C., where her mother, Mrs. J. P. McMillan, Jr., taught piano. Upon her arrival about 5:00 p.m., Linda went to the Music Conservatory portion of the Adminis-tration Building and there spoke to her mother. Linda and her mother were to go home together as soon as Mrs. McMillan completed her duties. While waiting for her mother, Linda

State v. Murry

walked in the nearby gardens at Vardell Hall, an acreage containing trees, large and small bushes, flowers, and a creek and a bridge over the creek. Along the main path, which was five or six feet wide, the distance from the bridge to the Administration Building was approximately 150 yards. There were smaller, secluded paths, covered with bushes, leading from the main path.

Linda testified in substance: When she entered the gardens, she saw and spoke with four girls from Vardell Hall. When they left, Linda stayed in the gardens. She saw defendant. He passed her and seemed to be leaving. When she went to the bridge, defendant came back and "struck up a conversation." Defendant asked Linda if she went to Vardell Hall. She told him she did not, that she was eleven years old and was in the sixth grade in school. Telling defendant she had "better go," Linda started walking along the main path towards the Administration Building. Defendant, stating he would walk with her, took hold of Linda's left arm, pulled her off the main path, dragged her down a smaller secluded path, drew a knife from his pocket, exhibited the open blade, cursed her and threatened to kill her, and threatened if she told he would come later and kill her and her mother. Under these circumstances, he laid her on the ground, pulled up her dress and slip, pulled down her panties, got on top of her, and "put his private parts into (her) private parts." When defendant allowed her to get up, Linda ran to the Administration Building where, trembling and crying, she found her mother and told her what happened. When these events occurred, it was "still light," about 7:00 o'clock.

Mrs. McMillan called the police. Officers Murchison and Bounds arrived immediately and talked with Linda. Shortly thereafter, the Chief of Police (Hagens) arrived and talked with Murchison and Bounds. A search for defendant was begun.

After Linda had talked with the officers, a doctor gave her a hypodermic to calm her. Soon thereafter, she was given a complete physical examination at the Southeastern General Hospital in Lumberton, N. C., by Dr. Brown, an expert gynecologist. Dr. Brown's testimony is explicit and unequivocal that Linda had been penetrated and that semen was deposited within her vagina.

Around 11:00 p.m., officers found defendant on the top of the roof of his house. He was arrested and taken to Lumberton,

N. C., where, in the sheriff's office, he talked with F. D. Johnson, Special Agent of the State Bureau of Investigation. A warrant had been served on defendant. Johnson advised defendant that he was an officer and was investigating the charge of rape against him. Johnson made notes of defendant's statements. The next morning, about 10:30, a deputy sheriff and Johnson brought defendant from the jail to the solicitor's room in the courthouse in Lumberton. There, defendant, holding the microphone, made statements to a tape recorder and answered questions by Johnson. Defendant's statements, together with the questions and answers, were transcribed.

When defendant's counsel objected to Johnson's testimony as to statements made to him on the two occasions referred to above, Judge Brewer, in the absence of the jury, conducted a *voir dire* hearing. At the hearing, Johnson testified in detail as to the circumstances under which the statements by defendant were made and was cross-examined by defendant's counsel. In response to the court's inquiry, defendant indicated he did not wish to offer evidence. The motion by defendant's counsel that the tape recording be produced was allowed. Although produced, it was not offered either at the *voir dire* hearing or at the trial.

At the conclusion of the *voir dire* hearing, Judge Brewer made and set forth in detail his findings of fact, *viz.*:

"The court on *voir dire* finds as a fact that on 15 September, 1969, the defendant, Willie Lee Murry, was arrested and brought to the sheriff's department of Lumberton, North Carolina, having been taken into custody in connection with the alleged crime of rape; that the defendant was advised of the alleged crime of rape and that before questioning the defendant, Officer F. D. Johnson, Special Agent with the State Bureau of Investigation, warned the defendant he had a right to remain silent; that anything he said could be used against him in a court of law; that he had the right to an attorney or lawyer, if he wanted one, and if he did not have sufficient funds to employ an attorney or lawyer to represent him, that one would be appointed for him prior to questioning, if he desired; that he could refuse to answer any questions, or stop making any statement at any time he so desired. That opportunity to exercise these rights was afforded the defendant at all times during interrogation; that the defendant requested no attorney and answered questions proposed to the defendant and by doing so,

knowingly, intelligently and understandingly waived the rights afforded him under the Miranda decision, as to an attorney and to remain silent and other rights offered defendant, under the Miranda and other Supreme Court decisions.

"That upon the evidence and finding of these facts, the court concludes that defendant freely, voluntarily and understandingly answered questions and made statements to Officer F. D. Johnson, Special Agent with (the) State Bureau of Investigation, without undue influence, compulsion or duress and without promise of any kind, and, therefore, it is adjudged that statements made by defendant and his answers to certain questions proposed to him by Officer F. D. Johnson, Special Agent of the State Bureau of Investigation, are competent and admissible evidence and that the officer will be permitted to testify accordingly, that the interrogation commenced at approximately 11:30 p.m., September 15, 1969, in the office of the Sheriff of Robeson County, at the courthouse in Lumberton, North Carolina, and that said interrogation was stopped at approximately 12:40 a.m., on the morning of September 16, 1969, when defendant was taken back to his cell in jail; on the morning of September 16, 1969, the defendant was brought to the office of the Solicitor of Superior Court of Robeson County; that the defendant was advised of his constitutional right, that is the right to remain silent; that anything he said could be used against him in a court of law; that he had the right of presence of an attorney and if he couldn't afford an attorney, one would be appointed by the court prior to his being questioned; that he could stop answering questions at any time he so desired; that the opportunity to exercise these rights was afforded the defendant during the entire interrogation; that defendant requested no attorney and did not want an attorney and agreed to answer questions and make statements relative to the alleged crime of rape of one, Linda McMillan, and by doing so, knowingly, intelligently and understandingly waived these rights as to remaining silent and appointment of counsel to represent him during his interrogation.

"Upon these events, the court finds that the defendant freely, voluntarily, and understandingly answered questions and made statements to F. D. Johnson, Special Agent of (the) State Bureau of Investigation, without fear, compulsion or duress, or promise of any kind, and after being advised of his constitutional rights, and offer to furnish defendant an attorney, if he so desired: . . . "

Thereupon, the court, over defendant's objection, permitted Johnson to testify as to statements made by defendant on the occasions referred to above. Defendant's statements, according to Johnson's testimony, substantially corroborated Linda's testimony. To refresh his recollection, Johnson referred to notes made by him on September 15th and to the transcript made from the tape recording on September 16th.

At trial, Linda identified defendant positively and unequivocally as the person who assaulted her. She had not known or seen him before that occasion. She did not see him again until he was placed on trial. She described him as wearing "black pants," a "purple sweater, kind of jacket," and "a necklace that hung down around his neck with a cross on it, hanging in front." Her description, with minor variations, corresponded to that of officers who observed the clothing worn by defendant when arrested. A photograph of defendant when taken into custody was identified and offered in evidence. Too, the clothes worn by defendant when taken into custody were identified and offered in evidence. The photograph and the clothes were offered and admitted only as corroborative evidence.

The jury was instructed it might return any one of five verdicts, *viz:* (1) guilty of rape; (2) guilty of rape with recommendation that the punishment be imprisonment for life in the State's prison; (3) guilty of an assault with intent to commit rape; (4) guilty of an assault on a female, he being a male person over the age of eighteen years; and (5) not guilty.

The jury returned a verdict of guilty of rape as charged in the bill of indictment "with a recommendation of life imprisonment." Upon this verdict, the court, as required by G.S. 14-21, pronounced judgment that defendent be imprisoned for life in the State's prison. Defendant excepted and appealed. On account of defendant's indigency, an order was entered that his appeal be perfected by his court-appointed counsel and that all costs incident to his perfecting the appeal be paid by the State of North Carolina.

*Attorney General Morgan and Assistant Attorney General Lake for the State.*

*J. H. Barrington, Jr., for defendant appellant.*

State v. Murry

BOBBITT, Chief Justice.

[1] The act of "carnally knowing and abusing any female child under the age of twelve years" is rape. G.S. 14-21; *State v. Monds,* 130 N.C. 697, 41 S.E. 789; *State v. Johnson,* 226 N.C. 671, 40 S.E. 2d 113. Neither force, *State v. Johnson,* 226 N.C. 266, 37 S.E. 2d 678, nor intent, *State v. Gibson,* 221 N.C. 252, 20 S.E. 2d 51, are elements of this offense.

[2] "The terms 'carnal knowledge' and 'sexual intercourse' are synonymous. There is 'carnal knowledge' or 'sexual intercourse' in a legal sense if there is the slightest penetration of the sexual organ of the female by the sexual organ of the male. It is not necessary that the vagina be entered or that the hymen be ruptured; the entering of the vulva or labia is sufficient. G.S. 14-23; *State v. Monds,* 130 N.C. 697, 41 S.E. 789; *State v. Hargrave,* 65 N.C. 466; *State v. Storkey,* 63 N.C. 7; Burdick: Law of Crime, section 477; 44 Am. Jur., Rape, section 3; 52 C.J., Rape, sections 23, 24." *State v. Bowman,* 232 N.C. 374, 61 S.E. 2d 107; *State v. Jones,* 249 N.C. 134, 105 S.E. 2d 513.

[3] The State's evidence was positive as to each and every element of the crime charged in the bill of indictment.

Defendant presents two questions: (1) Was the admission of Johnson's testimony as to defendant's in-custody statements erroneous and prejudicial? (2) Did the court err in instructing the jury with reference to the lesser included offense of assault on a female?

[4] There was ample evidence to support Judge Brewer's findings of fact. It is not contended that Johnson did not carefully and fully advise defendant as to his constitutional rights. Defendant contends the incriminating statements attributed to him by Johnson should have been excluded because (1) defendant was sixteen years old, and (2) several officers were present when the statements were made.

With reference to defendant's age, the record shows: Johnson testified on *voir dire* he knew defendant was "a sixteen-year-old boy." He testified at trial that defendant stated "that he completed the eighth grade in school." In the annotation, 87 A.L.R. 2d at 626, it is stated: "A confession is not inadmissible, in the absence of a statutory provision to the contrary, merely because the person making it is a minor." This rule obtains in this jurisdiction. *State v. Hill,* 276 N.C. 1, 14, 170 S.E. 2d 885, 894.

With reference to the presence of other officers, the record shows: The interrogation of defendant on both occasions was by F. D. Johnson, Special Agent of the State Bureau of Investigation. Their first conversation took place in the sheriff's office in the courthouse in Lumberton. During portions of the interview, Luther W. Hagens, Chief of Police of Red Springs, and Leroy Freeman and Carl Herring, Deputy Sheriffs, were in the office. Other (unidentified) officers stayed "in the outside office." The following morning, when the tape recording was made, the only officer present, except Johnson, was the deputy sheriff (Freeman) who had custody of defendant.

"[T]he mere fact that a confession was made while the defendant was in custody of police officers, after his arrest by them upon the charge in question and before employment of counsel to represent him, does not, of itself, render it incompetent." *State v. Gray,* 268 N.C. 69, 78, 150 S.E. 2d 1, 8, and cases cited.

Nothing in the evidence indicates that any officer mistreated, deceived or otherwise coerced defendant. Obviously, by getting on the roof of his house, defendant was seeking to conceal himself from the officers. After his arrest, according to Johnson's testimony and the statements attributed by Johnson to defendant, defendant was not intimidated or frightened. Upon the uncontroverted evidence and factual findings, the court properly admitted Johnson's testimony as to incriminating statements made by defendant.

[5] As indicated, defendant assigns as error the court's instruction that the jury might return a verdict of guilty of an assault upon a female by a male person *over the age of eighteen years.* It is contended that this instruction is erroneous because the only evidence as to defendant's age (Johnson's testimony on *voir dire)* tends to show that he was sixteen years of age. In so instructing the jury, seemingly the court had in mind the, provisions of G.S. 14-33 (G.S. 1B, Recompiled 1953) prior to the rewriting thereof by Chapter 618, Session Laws of 1969, now codified as G.S. 14-33 (G.S. 1B, Replacement 1969). Presently, under G.S. 14-33, a person who "[a]ssaults a female person, he being a male person," is guilty of "an aggravated assault."

The inadvertent error in the court's said instruction was not prejudicial to defendant. All of the evidence tended to show

the completed crime of rape. Apparently, the court considered certain of the statements attributed to defendant indicated his act of intercourse with Linda was not in all respects complete, and that this warranted the submission for jury consideration of the lesser included offense of assault with intent to commit rape.

[6] Nothing in the evidence warranted a verdict of guilty of a mere simple assault upon a female person by a male person. G.S. 15-169 and G.S. 15-170 are applicable *only when there is evidence* tending to show that the defendant may be guilty of a lesser offense. *State v. Jones,* 249 N.C. 134, 139, 105 S.E. 2d 513, 516, and cases cited. "The necessity for instructing the jury as to an included crime of lesser degree than that charged arises when and only when there is evidence from which the jury could find that such included crime of lesser degree was committed. The *presence of such evidence* is the determinative factor." *State v. Hicks,* 241 N.C. 156, 159, 84 S.E. 2d 545, 547; *State v. Williams,* 275 N.C. 77, 88, 165 S.E. 2d 481, 488. The error in the instruction was not prejudicial to defendant but definitely in his favor.

The evidence depicts a twofold tragedy: An eleven-year-old girl, referred to in defendant's confession as the "smaller girl," as the victim of rape, has experienced an unforgettable ordeal. A sixteen-year-old boy, by his lustful and uninhibited conduct, has forfeited his liberty.

No error.

Justice LAKE did not participate in the consideration or decision of this case.