STATE OF NORTH CAROLINA v. WILLIAM OTIS ROBERTSON

No. 70

(Filed 25 January 1974)

**1. Jury §§ 2, 3— motion for special venire of blacks and young people**

    In a prosecution for murder, kidnapping and rape, the trial court properly denied defendant's pretrial motion "for a special jury venire composed of blacks and young people of his age group, in addition to the regular jury venire."

**2. Homicide § 21— first degree murders — sufficiency of evidence**

    The State's evidence was sufficient to be submitted to the jury on issues of defendant's guilt of the first degree murders of two persons where a nine-year-old girl testified that when she, her mother and a companion entered her mother's home, they were attacked by an intruder using a knife, that immediately after the attack her mother and the companion lay on the floor and blood was all around, and that the intruder then took their billfolds, the sheriff testified he found the dead bodies on the floor of the house the next morning, a medical expert testified the cause of death was stab wounds, an expert testified that defendant's fingerprints were found in the house, and the nine-year-old girl, who spent three days in defendant's company immediately after the attack, positively identified defendant in court as the man who had attacked her mother and the companion.

**3. Kidnapping § 1— sufficiency of evidence**

    The State's evidence was sufficient to support submission of a kidnapping charge to the jury where a nine-year-old girl testified that, under threat of death if she did not obey him or attempted to escape, the defendant compelled her to accompany him from her home, to ride about with him all night in an automobile and then to roam with him in the woods for three days and nights.

**4. Rape § 5— sufficiency of evidence**

    The State's evidence was sufficient for submission to the jury on a charge of rape where it tended to show that defendant had sexual intercourse with a nine-year-old girl and that defendant threatened to kill her if she did not do as he commanded.

**5. Homicide § 15— SBI agent — testimony that victims were dead — description of wounds**

    The trial court in a murder prosecution did not err in permitting an SBI agent to testify that the victims were dead when he observed their bodies at the crime scene or in permitting him to state what wounds he observed on the bodies.

**6. Homicide § 31; Rape § 7— first degree murder — rape — sentences of life imprisonment**

    The trial court properly sentenced defendant to life imprisonment for offenses of rape and first degree murder which occurred prior to the decision in *State v. Waddell,* 282 N.C. 431.

**7. Kidnapping § 2— sentence of life imprisonment**
> The trial court properly imposed a sentence of life imprisonment
> for the offense of kidnapping. G.S. 14-39.

APPEAL by defendant from *Robert Martin, S. J.,* at the 9
April 1973 Session of SURRY.

By indictments, proper in form, the defendant was charged
in Stokes County with the murder of William Lee Ernst, Betty
G. Mabe, the kidnapping of her daughter, Brenda Lee Mabe,
and the rape of Brenda Lee Mabe, a child nine years of age.
Upon motion of the defendant, the cases were transferred to
Surry County for trial. Without objection, they were consoli-
dated for trial. The jury returned verdicts of guilty of murder
in the first degree of William Lee Ernst, murder in the first
degree of Betty G. Mabe, kidnapping and rape of a girl under
12 years of age. In each case the defendant was sentenced to
imprisonment for life, the sentences to be served consecutively.

The defendant offered no evidence. The evidence for the
State was to the following effect:

At about 7:30 p.m. on Sunday, 13 August 1972, Mrs. Betty
G. Mabe and William Lee Ernst, returning from a trip to the
beach, stopped in Kernersville to pick up her daughter Brenda
Lee, nine years of age, at the home of an older daughter, Mrs.
Taylor. Leaving the Taylor home, they drove to the home of
Mrs. Mabe in Stokes County. On arrival there, at approximately
8:00 p.m., they observed a window at the back of the house had
been broken and, upon entering the house, that "everything was
torn up." They went upstairs and, as they entered one of the
rooms, a man, positively identified in court by the child as the
defendant, sprang at them, brandishing a knife. They ran down
the stairs, the child in front. At the foot of the stairs she was
pushed through the glass storm door. She promptly reentered
the house and observed the defendant and Mr. Ernst fighting.
She then ran outside again. Very shortly the defendant came
out, took her by the hand and led her back into the house. There
she observed Mr. Ernst lying on the floor and her mother lying
in the kitchen, blood being "all over the place." The defendant
then removed billfolds from the two bodies and also took the
keys to Mr. Ernst's automobile in which he drove away, taking
the child with him.

The defendant told the little girl that if she tried to get
away or did anything that he did not want her to do, he would

kill her. She was frightened and stayed in the car while he went into a place of entertainment known as the Red Gate Club. While he was in the Red Gate Club, the child was observed in the parked car by several persons. After a time the defendant came out of the Red Gate Club and resumed driving, finally wrecking the Ernst car. Thereafter, a friend of the defendant's carried them back to a point near the Mabe home, where they arrived about daylight. After trying unsuccessfully to start Mrs. Mabe's automobile, which was parked at the house, the defendant compelled the child to go with him into one of the outbuildings where he had sexual intercourse with her, threatening to kill her if she did not submit. Thereafter, they reentered the house and the defendant, in the presence of the child, had sexual intercourse with the dead body of her mother.

At approximately 10:30 a.m., Mrs. Mabe's older daughter, Mrs. Taylor, being alarmed by her failure to reach her mother by telephone, went to the Mabe home, observed its condition from the outside and, without entering the house, went to the nearby home of a relative for assistance. The child and the defendant were in the Mabe house. Before Mrs. Taylor returned with the relative, the defendant went out of the back door, and into the nearby woods, taking the child with him.

The defendant and the little girl roamed through the woods, in the vicinity of the Dan River, for three or four days, she not knowing where she was and he threatening to kill her if she tried to run away from him. At the end of that period they observed some workmen and two trucks standing in a road. The defendant sent her to tell the men that her mother had fallen into the river and drowned, hoping thereby to get the men to leave their trucks and go searching along the river for the body of the child's mother, so that, in their absence, the defendant could steal one of the trucks and get away. The men, however, called the sheriff who recognized the child and took her to the hospital. The defendant was arrested shortly thereafter.

The doctor who examined the child was of the opinion that she had been sexually penetrated.

The Associate Chief Medical Examiner for the State performed autopsies upon the bodies of William Lee Ernst and Mrs. Betty Mabe. He described the stab wounds found by him upon each body and stated that, in his opinion, in each instance the death resulted from certain of the wounds so described.

A number of fingerprints lifted from the kitchen sink and cabinet in the home of Mrs. Mabe were compared with fingerprints known to be those of the defendant. In the opinion of the State's expert witness, the fingerprints so taken from the Mabe home were those of the defendant.

*Attorney General Robert Morgan and Deputy Attorney General Vanore for the State.*

*R. Lewis Ray for defendant.*

LAKE, Justice.

The defendant set forth ten assignments of error in his statement of the case on appeal. In his brief he states frankly that he has been unable to find any error of significance or consequence but requests this Court to review the record to see if such error appears therein. Due to the seriousness of the offenses charged and to the nature of the sentences imposed, we have not only given careful consideration to the assignments of error but have also reviewed the entire record. Like the defendant's counsel, we find no error which would justify a new trial or modification of the judgments of the Superior Court.

[1] The first assignment of error is to the denial of the defendant's pre-trial motion "for a special jury venire composed of blacks and young people of his age group, in addition to the regular jury venire." Neither the Constitution of the United States nor the Constitution or any law of this State requires that the jury which tries a criminal case be composed of, or include in its membership, persons of any specified race, age or sex or members of any other group. What is required is that there be no arbitrary, systematic exclusion of the members of such group in the selection process. *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed. 2d 759; *Brown v. Allen,* 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469; *State v. Harris,* 281 N.C. 542, 189 S.E. 2d 249; *State v. Cornell,* 281 N.C. 20, 187 S.E. 2d 768; *State v. Yoes,* 271 N.C. 616, 632, 157 S.E. 2d 386; *State v. Brown,* 271 N.C. 250, 156 S.E. 2d 272. The defendant does not contend, and there is no evidence whatever in the record to suggest, that members of any race or any other group were systematically or arbitrarily excluded in the process by which the jury which tried the defendant was selected. There is no merit in this assignment of error.

[2]   The defendant's Assignment of Error No. 10 is to the denial of his motion for judgment of nonsuit. This assignment is likewise without merit, the evidence being ample to support the verdict of guilty on each of the four offenses charged. The testimony of the little girl, Brenda Mabe, was that when she, her mother and their companion, William Lee Ernst, entered the home of Mrs. Mabe, they were attacked without provocation by an intruder armed with and using a knife. Immediately after the attack both her mother and Mr. Ernst lay on the floor and blood "was all around." The intruder then took their billfolds. The Sheriff of the County testified that he found the dead bodies of Mrs. Mabe and Mr. Ernst on the floor of the house the next morning. The medical expert who performed autopsies on the bodies testified that, in each case, the cause of death was stab wounds.

Expert testimony was to the effect that fingerprints of the defendant were found in the house. The little girl positively identified the defendant, in court, as the man who had so attacked her mother and Mr. Ernst. She, herself, had spent three days and three nights in the defendant's company immediately after the attack. There was no evidence of any pre-trial identification of the defendant by this witness. Clearly, the evidence was ample to support the verdict of murder in the first degree, and there was no error in denying the motion for judgment as of nonsuit with reference to either of the murder charges. *State v. Thompson*, 280 N.C. 202, 185 S.E. 2d 666; *State v. Sanders*, 276 N.C. 598, 174 S.E. 2d 487 (death sentence vacated, 403 U.S. 948, 91 S.Ct. 2290, 29 L.Ed. 2d 860).

[3]   The child's testimony was that, under threat of death if she did not obey him or attempted to escape, the defendant compelled her to accompany him from her home, to ride about with him all night in an automobile and then to roam with him in the woods for three days and nights. This is ample evidence to support the submission to the jury of the charge of kidnapping. *State v. Murphy*, 280 N.C. 1, 184 S.E. 2d 845; *State v. Woody*, 277 N.C. 646, 178 S.E. 2d 407.

[4]   The evidence shows the child was nine years of age at the time of the offenses and that the defendant had sexual intercourse with her. She testified that he threatened to kill her if she did not do as he commanded. Clearly, this evidence was sufficient to submit to the jury the charge of rape. G.S. 14-21; *State v. Cox*, 280 N.C. 689, 187 S.E. 2d 1; *State v. Murry*, 277

N.C. 197, 176 S.E. 2d 738; *State v. Temple*, 269 N.C. 57, 152 S.E. 2d 206.

The defendant's Assignments of Error 2, 3, 4, 5, 8 and 9 were to the court's sustaining objections by the State to questions propounded by the defendant's counsel to Brenda Mabe and to other witnesses for the State on cross-examination. In a number of these instances the witness answered the question notwithstanding the court's having sustained the objection, and the record does not indicate that the jury was instructed to disregard the answer. In other instances the record does not disclose what the answer of the witness would have been had the objection not been sustained. Furthermore, we find no error in the ruling of the trial judge on these various objections by the State. There is no merit in these assignments of error.

[5] The defendant's Assignments of Error 6 and 7 are to the court's overruling of the defendant's objections to questions propounded by the solicitor to an agent of the State Bureau of Investigation who participated in the investigation of the murders and, in the course thereof, observed the bodies of Mrs. Mabe and Mr. Ernst at the scene of the crimes. There was no error in allowing this witness to testify that Mrs. Mabe and Mr. Ernst were dead when he observed the bodies or in permitting him to state what wounds he observed on the bodies. There is no merit in either of these assignments of error.

The defendant did not except to any portion of the court's charge to the jury. We have, however, examined the charge carefully and find therein no error.

[6, 7] The rape of Brenda Mabe and the murders of Mrs. Mabe and Williaim Lee Ernst having occurred prior to our decision in *State v. Waddell*, 282 N.C. 431, 194 S.E. 2d 19, the court properly sentenced the defendant to imprisonment for life for each of these offenses. There was also no error in the imposition of the sentence to life imprisonment for the offense of kidnapping Brenda Mabe. G.S. 14-39; *State v. Barbour*, 278 N.C. 449, 180 S.E. 2d 115.

No error.