STATE OF NORTH CAROLINA v. RONALD LEE MILLER

No. 24

(Filed 12 April 1972)

**1. Burglary § 5— first degree burglary — sufficiency of evidence**

The State's evidence was sufficient to support a jury finding that defendant feloniously and burglariously broke into and entered an occupied home with intent to commit the felony of rape.

**2. Criminal Law § 66— pretrial photographic identification — in-court identification**

In a prosecution for first degree burglary, there was clear and convincing evidence to support the trial court's findings (1) that a pretrial photographic procedure at which the prosecuting witness identified defendant's photograph from a group of twelve photographs exhibited to her by a police officer at her place of employment was

State v. Miller

not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification, and (2) that the prosecuting witness' identification testimony at the trial was based solely on her observations of the person in her room on the night of the crime; consequently, the trial court did not err in the admission of the prosecuting witness' in-court identification testimony and the police officer's testimony as to the photographic identification.

**3. Criminal Law § 86— cross-examination — prior convictions**

For the purpose of impeachment, a witness, including the defendant in a criminal case, is subject to cross-examination as to his convictions for crime.

**4. Criminal Law § 86— juvenile defendant — cross-examination — prior adjudications of guilt**

For purposes of impeachment, it is permissible to cross-examine a juvenile defendant with reference to his prior convictions or adjudications of guilt of prior conduct which, if committed by an adult, would have constituted a conviction of crime.

APPEAL by defendant under G.S. 7A-27(a) from *Kivett, J.*, August 23, 1971 Criminal Session of FORSYTH Superior Court.

Defendant was tried on a bill of indictment which charged that, on December 20, 1971, "about the hour of twelve in the night of the same day," defendant "unlawfully, feloniously and burglariously did break and enter the dwelling house of Geraldine Styles, to wit; located at 45-B Columbia Terrace, Winston-Salem, North Carolina, with the felonious intent to commit the crime of rape in the said dwelling house, upon the said Geraldine Styles, a female person, then and there actually occupying the said dwelling house at the said time. . . ."

The State offered the testimony of Geraldine Styles; Shirley Smith, Mrs. Styles's neighbor; Officer R. T. Masten; Officer W. R. Burke; and (in rebuttal) Wade Witherspoon. Defendant testified but offered no other evidence.

The only conflict in the evidence relates to the identity of the person who committed the crime charged in the indictment.

Uncontradicted evidence tends to show the facts narrated below.

Mrs. Geraldine Styles, age 26, lived in a one-story apartment at 45B Columbia Terrace, Winston-Salem, N.C. It consisted of four rooms, two bedrooms to the right as you enter the front door and a living room and kitchen to the left. Mrs.

State v. Miller

Styles occupied the front bedroom. Her two children, ages 6 and 4, occupied the back bedroom.

On Sunday night, December 20, 1970, between nine-thirty and ten o'clock, Mrs. Styles locked the front and back doors of her apartment and went to bed. She closed and latched the kitchen window, which was near the back door. A hole in the glass right above the latch had been made on the preceding Friday when she had left her key in the house and couldn't get another key because the Columbia Terrace office was closed. This enabled her to unlatch and raise the window and open the door by reaching in from the outside.

When Mrs. Styles went to bed, Gary, her six-year-old son, was in the living room watching television. Mrs. Styles was very tired and went to sleep. Soon thereafter she was awakened by Gary who asked whether she wanted to keep the lights on, the only lights being the television light and a "revolving light" on the Christmas tree. As directed by Mrs. Styles, Gary turned off these lights. Mrs. Styles went back to sleep.

About 10:30 p.m., Mrs. Styles was awakened by the light from a flashlight. A young man, "real young," was standing "right off from the door in front of [her] night table." The intruder had a knife in one hand and looked at her but said nothing. She was "so stiff and so scared that [she] couldn't say anything." When she raised up, as if to get up, the intruder stepped forward and said, "Don't holler or I'll kill you." The knife in his hand, identified as State's Exhibit No. 2, "looked sort of like a dagger but it was a long one." The flashlight, identified as State's Exhibit No. 3, had "red plastic like" around both ends and "a metal part in between." When Mrs. Styles asked what he wanted, the intruder stated in vulgar phrase that he was going to have sexual intercourse with her. At that time Gary came up the hall. The intruder told Mrs. Styles to "tell him to go back to bed," and she did so.

After Gary went back to his bedroom, the intruder laid the flashlight on the table beside the bed with the light shining toward the bed. Mrs. Styles's clothing consisted of panties and a gown. The intruder went over to the bed, pulled the cover off of her and pulled off her panties. Getting on the bed with her, he tried "to place his parts in [her] parts." When she said, "There's my son coming up the hall again," the intruder got

State v. Miller

out of bed and went to the door. He shined the flashlight "down the hall" and said, "He is not out there." He put the flashlight back on the little table near the door and came back to the bed, still holding the knife in his right hand. The intruder then got in bed, on top of her, and "placed his parts in [hers]." She "just laid there stiff." Upon her refusal to take off her gown, he got up, pulled off her gown and dropped it on the floor. Thereupon Mrs. Styles told him he didn't know "how to do it," and suggested that he pull his pants down, lie on the bed and let her get on top of him. Apparently assured of her cooperation, he complied with her suggestion. In arranging this maneuver, Mrs. Styles managed to get one foot on the floor and a grip on the bedcovers. She then leaped from the bed, jerked the bedcovers over his face, and ran, naked and screaming, out of the room, out the front door and into the apartment of Mrs. Smith.

Mrs. Shirley Smith lived in the adjoining apartment, at 45A Columbia Terrace. On the night of December 20, 1970, after 10:00 p.m., she heard Mrs. Styles screaming and calling upon Mrs. Smith to open her front door. When Mrs. Smith opened the door, Mrs. Styles, who was nude, ran into the Smith apartment screaming, "There's a man in the house." Mrs. Smith called the police.

On the night of December 20, 1970, Officer Masten, who was on duty with Officer Hogan, received a call from the police radio room to investigate a disturbance at 45A Columbia Terrace. They received the call a minute or so after eleven o'clock and arrived at 45A Columbia Terrace ten or fifteen minutes after eleven. There they saw Mrs. Geraldine Styles. She was "dressed in a gown" and "appeared excited, hysterical." After hearing her account of what had occurred, they went into the Styles apartment, 45B Columbia Terrace.

In Mrs. Styles's bedroom, the officers found a knife (State's Exhibit No. 2), a flashlight (State's Exhibit No. 3), and a key ring with two keys and a tag on it (State's Exhibit No. 4). The knife was "a black leather handle military K-bar knife with about a seven-inch blade." It was on the floor near Mrs. Styles's bed and "between her door and her bed." The key ring was on the floor near the knife. One of the keys was "a Sargent key." The tag had the name "Peggy" on it. The flashlight was a two-cell "Ash-Flash" brand flashlight with plastic

at both ends. The flashlight was on the night table beside Mrs. Styles's bed. The knife, flashlight and key ring and attachments were placed in "Property Control at the Police Department." The officers also found on the floor in Mrs. Styles's bedroom a gown and panties.

The kitchen (back) door was open and the window was "partially opened." There was a hole in a section of the window "right at the latch" large enough for the officer to put his hand through. He saw no loose glass on the floor in the vicinity of the window. Mrs. Styles had previously stated that she had closed the window when she went to bed and that the glass had been broken on a previous occasion. Masten also related statements made to him by Mrs. Styles with reference to locking up the apartment before going to bed, the actions and words and appearance of the intruder, and the circumstances under which she broke away from him and fled to her neighbor's apartment. These included a statement to the effect that she had not known defendant even by sight but "she felt she could recognize [him] if she saw him again."

Detective Sergeant Burke, in his investigation of the alleged burglary, got State's Exhibit No. 4, the "two keys and a tag with 'Peggy' on it," out of "Property Control." He found that the keys would not work the doors at Mrs. Styles's apartment. Later, in checking a board at the Columbia Terrace office which contained an extra key to each apartment in the project, he found a key to Apartment 47C which was similar to one of the keys on State's Exhibit No. 4. He went to 47C and found the key on State's Exhibit No. 4 "worked the door" at 47C. He then obtained information that defendant, his mother and his sister, Peggy Miller Williams, were living in 47C on December 20, 1970.

On two occasions Sgt. Burke asked Mrs. Styles to come to the police station "to look at pictures." On each of these occasions she viewed approximately "two hundred pictures" but did not make an identification. Later, on February 9, 1971, Sgt. Burke went to Western Electric with a group of twelve pictures and showed these pictures to Mrs. Styles.

The foregoing evidence was admitted without objection. The appeal presents no question relating to its competency.

Over objection, Mrs. Styles testified positively that defendant was the intruder in her home on the night of December 20,

State v. Miller

1970. She testified she had observed him from time to time over a period of twenty to twenty-five minutes when the light shined on his face during her encounters with him. She then observed that he had "a stocking on his head," wore "some type of sweater," and was wearing tennis shoes. What she could see best was "the front of his face." His face and his lips were thin and he had small or medium ears. (Note: At the *voir dire* hearing, she testified that the intruder and she "were about the same size.")

Over objection Sgt. Burke testified that the pictures he showed Mrs. Styles on February 9, 1971, were twelve Polaroid snapshots of Negro males; that, exclusive of defendant who was then 14, their ages varied from 15 or 16 to 28; that he asked Mrs. Styles to look at the pictures to see if she could identify any of them; and that, after looking through the pictures, Mrs. Styles handed him a photograph and said, "That's the man right there."

Masten and Burke testified without objection as to statements made to them by Mrs. Styles in which she described the intruder in her home on December 20, 1970, with greater particularity. According to Officer Masten, Mrs. Styles described the intruder as a "male Negro, age early twenties, height approximately five feet six inches, slender build, smooth shaven, black stocking cap on hair, possibly a brown sweater, sneakers, . . . . " According to Sgt. Burke, Mrs. Styles described the intruder as "slim, young, did not shave, five six in height, and a hundred thirty-five to a hundred forty pounds, twenty-two to twenty-three years old, small face, wearing tennis shoes, wool sweater, had a stocking over the hair."

Defendant's testimony, summarized except when quoted, is narrated below.

On December 20, 1970, defendant lived with his mother, Mrs. Josephine McLean, and his brother and sister (seven-year-old twins), at 47C Columbia Terrace and had lived there about eighteen months. His grandmother, Mrs. Willie Mae Miller, lived in the Happy Hills section at 714 Liberia Street. His mother left on December 28th or December 29th and he went over to his grandmother's house. He did not actually know where he was on the night of December 20, 1970, but probably was at his home or at his grandmother's house.

The road from his house to the Happy Hills section ran in back of Mrs. Styles's apartment. Prior to December 20, 1970, he had seen her standing in her back door. He had never been in her apartment, had never spoken to her and knew nothing about her.

He did not own the knife or flashlight identified as State's exhibits and knew nothing about them. The keys in State's Exhibit No. 4 were his. One of them, the "Sargent key," fitted his grandmother's house; and the other fitted the apartment at Columbia Terrace where he had lived. He had lost these keys back in November, 1970, and had told his grandmother he had lost them. His grandmother had her lock changed. He bought another key to his apartment from the Columbia Terrace office. He had a sister whose name was Peggy.

Defendant's mother and grandmother were not present at the trial. Defendant testified he did not know where his mother was, that he believed his grandmother was at work but didn't know where.

Defendant testified he was arrested on February 18, 1971. The record shows that this prosecution was initiated by the issuance of a juvenile summons on March 31, 1971.

The cross-examination of defendant with reference to prior convictions for unrelated criminal offenses will be set forth in the opinion.

In rebuttal, Wade Witherspoon testified that, as maintenance supervisor for the Federal Housing Authority at Happy Hill Gardens, he was in charge of all maintenance work in the Happy Hills section; and that he had had no occasion to go to Mrs. Miller's home at 714 Liberia Street.

The jury found defendant guilty of burglary in the first degree as charged and recommended that his punishment be imprisonment for life. Thereupon, judgment of life imprisonment was pronounced.

Defendant excepted and appealed.

*Attorney General Morgan and Assistant Attorneys General Melvin and Ray for the State.*

*Donald K. Tisdale for defendant appellant.*

State v. Miller

BOBBITT, Chief Justice.

[1]　The assignments of error relating to the denial of defendant's motions for nonsuit have no merit. Uncontradicted evidence offered by the State tended to show that a young Negro male feloniously and burglariously broke into and entered the occupied home of Mrs. Styles during the night of December 20, 1970, with intent to commit the felony of rape. Too, Mrs. Styles's positive testimony, apart from corroborating circumstances, was amply sufficient to support a finding that defendant is the person who committed the crime.

[2]　Defendant excepted to and assigns as error (1) the admission of Mrs. Styles's testimony in which she identified defendant as the person who committed the crime, and (2) the admission of Sgt. Burke's testimony as to what occurred on February 9, 1971, at Western Electric, when Mrs. Styles identified one of the twelve photographs then shown her as the photograph of the young Negro male who committed the crime.

Defendant's objection to Mrs. Styles's identification testimony is based on his contention that her testimony was tainted because of illegality in the photographic identification on February 9, 1971. He contends the photographic identification was illegal because the procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 19 L.Ed. 2d 1247, 1253, 88 S.Ct. 967, 971 (1968).

Before admitting the testimony, the court conducted two *voir dire* hearings, the first to consider the admissibility of Mrs. Styles's testimony and the second to consider the admissibility of Sgt. Burke's testimony. At these hearings, the only testimony, which was given in the absence of the jury, was that of Mrs. Styles and of Sgt. Burke, respectively. After each *voir dire* hearing, the court made findings of fact which are fully supported by uncontradicted evidence found by the court to be clear and convincing. In each instance, the court found that the identification procedure on February 9, 1971, was *not* "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." The court further found that Mrs. Styles's identification testimony before the jury was based solely on her observation of the person in her room on the night of December 20, 1970, completely independent of other factors.

Although defendant noted a general exception to the findings made by the court after each *voir dire* hearing, no exception or assignment of error is addressed to any specific factual finding or legal conclusion.

On February 9, 1971, defendant had not been arrested or charged with any criminal offense. The photographs were shown Mrs. Styles in the course of Sgt. Burke's investigation.

We conclude that defendant's objections to the testimony of Mrs. Styles and of Sgt. Burke were properly overruled and that assignments of error relating thereto have no merit.

Defendant excepted to and assigns as error the overruling of his objections to questions asked him on cross-examination as to whether he had been convicted of specific unrelated criminal offenses. In response, defendant testified he had been convicted of house breaking on August 27, 1967, and of mail fraud on an unspecified date.

[3] For purposes of impeachment, a witness, including the defendant in a criminal case, is subject to cross-examination as to his convictions for crime. *Ingle v. Transfer Corp.*, 271 N.C. 276, 279-80, 156 S.E. 2d 265, 268-69 (1967), and cases there cited; *State v. Williams*, 279 N.C. 663, 669, 185 S.E. 2d 174, 178 (1971).

[4] Defendant contends the foregoing rule should not apply to the cross-examination of a defendant with reference to whether he had been found guilty of conduct committed by him while a juvenile which, if committed by an adult, would have constituted a conviction of crime. The question directly presented on this appeal is not whether an adult witness may be cross-examined with reference to convictions or adjudications of guilt of criminal conduct committed years before when he was a juvenile. Here the fifteen-year-old defendant was on trial for first degree burglary allegedly committed by him when he was fourteen. By electing to testify, defendant put in issue his credibility as a witness. The question is whether it was permissible to cross-examine a juvenile with reference to his prior convictions or adjudications of guilt of prior conduct which, if committed by an adult, would be accurately denominated criminal offenses.

As a basis for his contention that the general rule should not apply, defendant quotes Sections 24 and 29 (6), Article 2,

Chapter 110 of the General Statutes, as these sections appear in Volume 3A (Replacement 1966). However, except for G.S. 110-25.1 and G.S. 110-39, Article 2 of Chapter 110 was rewritten by Section 1 of Chapter 911 of the Session Laws of 1969. The provisions formerly codified as Sections 24 and 29(6) no longer appear in Article 2 of Chapter 110. As set forth below, the system of "Juvenile Courts" formerly provided by Article 2 of Chapter 110 has been superseded.

Article 23, Chapter 7A, as now codified in Volume 1B (Replacement 1969) of the General Statutes of North Carolina, was rewritten by Section 2 of Chapter 911 of the Session Laws of 1969. Article 23 is captioned, "Jurisdiction and Procedure Applicable to Children." It vests exclusive, original jurisdiction over any case involving a child in the district court judge and provides in detail for procedures in the district court in cases involving children.

Defendant calls attention to this provision of G.S. 7A-277: "The purpose of this article is to provide procedures and resources for children under the age of sixteen years which are different in purpose and philosophy from the procedures applicable to criminal cases involving adults." Although not referred to by defendant, we take notice that G.S. 7A-287, which provides for maintaining "a complete record of all juvenile cases," contains this sentence: "An adjudication that a child is delinquent or undisciplined shall not . . . be considered as conviction of any criminal offense."

In *State v. Alexander*, 279 N.C. 527, 184 S.E. 2d 274 (1971), the defendant, then twenty-one, testified at his trial for armed robbery. When cross-examined with reference to a prior conviction, he answered: "When I was a juvenile, in 1965, I was convicted of store breaking and larceny." Justice Huskins, for the Court, said: "Upon a charge of store breaking and larceny—a felony the punishment for which could be ten years—this defendant, even if only fifteen years old at the time, could have been processed as a juvenile or tried and convicted in the superior court. *State v. Burnett*, 179 N.C. 735, 102 S.E. 711 (1920); *State v. Rogers*, 275 N.C. 411, 168 S.E. 2d 345 (1969). He said he had been *convicted.* His answer was competent for impeachment purposes." *State v. Alexander, supra* at 535, 184 S.E. 2d at 280. Justice Huskins also said: "When a defendant in a criminal case takes the stand, he may be impeached by

State v. Miller

cross-examination with respect to previous convictions of crime, but his answers are conclusive and the record of prior convictions cannot be introduced to contradict him. *State v. Sheffield*, 251 N.C. 309, 111 S.E. 2d 195 (1959) ; *State v. King*, 224 N.C. 329, 30 S.E. 2d 230 (1944). *In a criminal case, this rule applies to every defendant who takes the stand, regardless of his age at the time of his previous conviction."* (Our italics.) *State v. Alexander, supra* at 535, 184 S.E. 2d at 280. Although not necessary to decision in the *Alexander* case, the italicized statement is apposite to the case under consideration.

In the present case, the State's evidence tends to show that defendant committed the crime of first degree burglary as charged and also the crime of rape. Assuming it would be technically accurate to refer to violations of the criminal law committed by a person under fourteen years of age as adjudications rather than as convictions, the gist of defendant's testimony was that on prior occasions he had been found guilty of conduct which, if committed by an adult, would be criminal. Whether labeled adjudication or conviction would seem to make no difference in respect of its effect, if any, upon defendant's credibility as a witness. Under the circumstances of this case, we perceive no error in the admission of the testimony of defendant relating to previous violations of the criminal law for consideration by the jury solely as bearing upon his credibility as a witness.

Decisions from other jurisdictions cited by defendant have been considered. They are based wholly or in substantial part on the statute law of the jurisdictions involved. Suffice to say, they do not control decision herein.

We note that the present decision is in accord with decisions of the North Carolina Court of Appeals. See *State v. Brown,* 1 N.C. App. 145, 160 S.E. 2d 508 (1968) ; *State v. Jeffries,* 3 N.C. App. 218, 164 S.E. 2d 398 (1968).

Defendant's other assignments of error are formal and require no discussion.

Defendant having failed to show prejudicial error, the verdict and judgment will not be disturbed.

No error.