STATE OF NORTH CAROLINA v. DON CHANDLER

No. 764SC307

(Filed 15 September 1976)

1. Criminal Law § 127— arrest of judgment — resisting two officers — different verdicts

Defendant was not entitled to have judgment arrested on the ground that the jury could not legally find him guilty of resisting an officer when it found him not guilty of resisting a second officer since the jury's verdict in either case was not dependent upon its verdict in the other case.

2. Criminal Law § 99— instructions to confine answer to question asked — no expression of opinion

The trial judge did not express an opinion when, on three separate occasions during the trial, he instructed defendant and his witness to confine their response to the question asked.

3. Criminal Law § 86— admission of prior crimes — opportunity to explain

Defendant failed to show he was prejudiced by the court's refusal to allow defendant to explain fully the prior convictions which he admitted on cross-examination.

4. Criminal Law §§ 102, 128— jury argument by district attorney — motion for mistrial

In a prosecution for resisting a law officer, the trial court did not err in the denial of defendant's motion for a mistrial because of the district attorney's jury argument that "the defendant was in possession of property which he, the defendant, must have or in

some way stolen" where the court instructed the jury to disregard the district attorney's remark about stolen goods.

APPEAL by defendant from *James, Judge*. Judgment entered 29 October 1975 in Superior Court, ONSLOW County. Heard in Court of Appeals 26 August 1976.

Criminal prosecution on a warrant, proper in form, charging that defendant Don Chandler "did unlawfully, wilfully, . . . resist Benny Simms [sic], a public officer holding the office of Deputy Sheriff of Onslow County, N. C. by kicking officer 2 times in the stomach. At the time, such officer was attempting to discharge a duty of his office, to wit: arrest Don Chandler for resisting arrest."

The record before us discloses that defendant was also charged with resisting Deputy Sheriff Sammy Jarman in his attempt to serve a warrant to search for stolen goods. Defendant was convicted in district court on both charges of resisting an officer. He appealed both cases to superior court where they were consolidated for trial de novo.

Upon the defendant's pleas of not guilty in both cases, the State offered evidence tending to show the following:

On 23 June 1975 Sims and Jarman, Deputy Sheriffs, went to defendant's mobile home at 11:30 p.m. to serve a search warrant to search for stolen property. Accompanying the officers was one Youngblood, the owner of the alleged stolen property. Defendant generally cooperated with the officer until Jarman requested that Youngblood be allowed to come out to a utility shed in defendant's backyard to identify what Jarman believed to be some of the stolen property. To this request defendant replied. "Hell, no; Youngblood's not looking at anything I have." Jarman informed the defendant that notwithstanding his objection Youngblood must be allowed to examine the property. State ABC Officer Robert Warlick and SBI Agent Steve Woodall, who had just arrived on the scene, brought Youngblood out to the utility shed.

When Jarman opened the door to the shed, defendant pushed him back and slammed the door so Youngblood could not see inside. Jarman said, "You're under arrest for interfering with an officer," and again opened the door, but defendant again pushed him back and closed the door. Jarman struck at defendant with his blackjack but missed. Defendant then went into a

"karate stance." Sims then attempted to handcuff defendant but when he approached him, defendant kicked Sims twice in the stomach and chest. Jarman then hit defendant with his blackjack and the two officers attempted to handcuff him, but he broke away and ran toward his trailer vowing to get his gun and kill them. Sims pursued and caught defendant on the front porch where they struggled until Jarman came to Sims' aid by hitting defendant with his blackjack. The officers then subdued and handcuffed the defendant.

Defendant offered evidence tending to show the following:

When Jarman requested that Youngblood examine the property, he objected because the hour was late and he had work to perform early the next morning. He also objected because Youngblood was not a public officer and he felt that the search warrant did not give a private cittizen the authority to come onto his property. He did inform the officers, however, that he was willing for them to take the property with them.

When Jarman opened the door to the shed to let Youngblood inside, he closed it, and then Jarman struck him on the head with his blackjack, but at no time did Jarman tell him that he was under arrest. Defendant's wife placed herself between defendant and Jarman and Jarman knocked her to the ground. Defendant picked her up, and then Sims grabbed his arm and swung him around. Jarman struck him again with his blackjack, but defendant did not fight back. He did say that he would get his gun and run them off his property, even though he knew he had no gun. He ran around to the front of the mobile home where he collided with Sims. Jarman then came up and struck him over the eye with his blackjack resulting in a cut that required twelve stitches.

The jury acquitted the defendant of the charge of resisting Jarman in his attempt to serve a search warrant, but convicted him of the charge of resisting Sims. From a judgment imposing a jail sentence of six months, defendant appealed.

*Attorney General Edmisten, by Assistant Attorney Guy A. Hamlin for the State.*

*Turner & Harrison, by Fred W. Harrison for defendant appellant.*

HEDRICK, Judge.

[1]   Defendant first argues that the judgment appealed from should be arrested because the verdicts on the two charges of resisting an officer are inconsistent. He argues that since the jury found him not guilty of resisting Officer Jarman, it could not legally find him guilty of resisting Officer Sims. The verdict of not guilty in the case of resisting Officer Jarman is not such a fatal defect appearing on the face of the record as to require that the judgment be arrested in the case of resisting Officer Sims. Under the factual situation here presented, the jury's verdict in either case was not dependent upon its verdict in the other case. Defendant's motion to arrest judgment is denied.

[2]   On three separate occasions during the trial the court instructed the defendant and his witness to confine their response to the question asked. This is the basis for defendant's exceptions 4, 8, and 14, upon which he bases his second assignment of error. We have examined each and find the court correctly and properly instructed the witness with respect to his or her testimony. The court did not violate G.S. 1-180, as defendant contends, and express an opinion as to the evidence. This assignment of error has no merit.

On cross-examination defendant testified that he had been convicted of felonious assault on a police officer, attempted maiming and unlawful wounding, and petty larceny of an auto. On cross-examination he was allowed to testify that he pled guilty to the felonious assault because he had worked a deal. On redirect examination with respect to these convictions the record reveals the following:

"Q. The instance that the Solicitor—District Attorney —has asked you about where you were convicted of unlawful wounding, what happened in that case?

COURT: Objection sustained.

EXCEPTION No. 9

Q. Did you enter a plea of guilty or were you convicted by the Court?

A. I entered a plea of guilty, sir. A bullet richocheted and hit a gentleman and I . . .

COURT: Sustained. You have answered the question.

State v. Chandler

EXCEPTION No. 10

Q. Did you fire a weapon at anyone?

A. No, sir.

COURT: Sustained.

EXCEPTION No. 11

Q. Now the occasion that the District Attorney has questioned you about, he said auto larceny, what were you convicted of or plead guilty to?

A. I pleaded guilty to being in the car because you don't know about them things . . . .

COURT: Sustained. You have answered the question.

EXCEPTION No. 12

Q. Did you know at the time that you were in the car that it was stolen?

A. No, sir.

Q. After talking with the District Attorney, you entered a plea by your lawyer?

A. Yes, sir.

Q. That was in Virginia?

A. Yes, sir.

Q. Now the other charge which the Solicitor asked you about, I believe Felonious Assault, when did that occur; do you recall the date? I believe you said a police officer was involved?

COURT: The question, I thought, was brought up that that was ten years ago, '65, wasn't it?

ANDREWS: That was in '65.

HARRISON: I don't recall if that was the one or not, Your Honor.

A. If that's the one, I pleaded guilty to it because there was a bunch of gentlemen there; and the lawyer said . . .

COURT: Sustained. Gentlemen, I'm not permitting either State or the defendant to go into long explanations

State v. Chandler

of the offenses. It's right to ask about what they were; but the circumstances of each case is not material here.

EXCEPTION NO. 13

Q. I'll ask you if you entered a plea of guilty to that or if you were convicted by the Court?

A. I pleaded guilty to it, sir."

[3] In his third assignment of error, based upon exceptions 9 through 13, defendant contends that the court erred in not allowing him to explain the prior convictions he admitted on cross-examination. While a witness is entitled to explain on cross-examination or on redirect examination any convictions he has admitted, Stansbury, N. C. Evidence 2d, § 112, the trial court is allowed considerable discretion in limiting such explanations. *State v. Sanders,* 276 N.C. 598, 174 S.E. 2d 487 (1970) ; *State v. White,* 271 N.C. 391, 156 S.E. 2d 721 (1967).

In the present case we find no abuse of discretion on the part of the trial court in its rulings challenged by these exceptions. We do not conceive how the defendant might have benefited by being allowed to further pursue the matter. Defendant has failed to show he was prejudiced in any way by the court's rulings. This assignment of error is not sustained.

Based upon several exceptions the defendant contends that the court in its charge to the jury expressed an opinion on the evidence in violation of G.S. 1-180. We have carefully examined each exception upon which this assignment of error is based and find them to be without merit. When the charge is considered contextually as a whole, it is, in our opinion, free from prejudicial error.

[4] Finally defendant argues the court erred in denying defendant's motion "that the verdict of the jury be set aside and that a mistrial be declared." The record indicates that defendant based his motion on the statement of the district attorney in his argument to the jury "that the defendant was in possession of property which he, the defendant, must have or in some way stolen."

This assignment of error has no merit. Upon objection, and at the request of the defendant, the court instructed the jury to disregard the remarks of the district attorney with respect to the stolen goods, for the defendant could have come into pos-

---

session of the goods lawfully. We hold the court properly instructed the jury with respect to the improper argument of the district attorney.

We hold the defendant had a fair trial free from prejudicial error.

No error.

Judges BRITT and MARTIN concur.