STATE OF NORTH CAROLINA v. JOE MARK HERBIN

No. 35

(Filed 6 November 1979)

1. Homicide § 21.7— shooting death — sufficiency of evidence

Evidence was sufficient to be submitted to the jury in a homicide prosecution where it tended to show that defendant fired a shot through the window of a recreation center; deceased yelled to him that he could get hurt playing around like that; defendant then approached deceased and shot him at close range; and deceased never raised the bottle he was holding and never approached defendant as if he were going to harm him.

2. Homicide § 28— self-defense — jury instruction — definition — burden of proof

When charging on self-defense, a trial judge must correctly define the term self-defense and must place the burden on the State to disprove self-defense beyond a reasonable doubt, both of which the trial court did in this case.

3. Criminal Law § 114.3— jury instructions — reporter's improper punctuation — no expression of opinion

There was no merit to defendant's contention that the trial court expressed an opinion in instructing the jury that " . . . the defendant was not the aggressor if the defendant voluntarily and without provocation entered the fight. He was the aggressor," since the court's apparent expression of opinion was simply the result of the court reporter's improper punctuation.

4. Homicide § 28.2— self-defense — apparent necessity — instructions adequate

Where the trial court at some other point in the charge properly instructed on self-defense and thereby gave defendant the full benefit of the doctrine of apparent necessity, the court's use of the phrase "circumstances as they existed" rather than "as they appeared" did not deny defendant the benefit of an instruction that he had a right to defend himself under circumstances of apparent necessity as well as real or actual necessity.

5. **Criminal Law § 99.7— court's admonishing of witnesses—no expression of opinion**

The trial court did not impermissibly express an opinion concerning the credibility of defendant's testimony and testimony of a defense witness where the judge admonished defendant to answer the questions asked by the district attorney, not to talk back, and to refrain from arguing with the district attorney, and where the judge instructed the defense witness to answer the question and not to argue with the district attorney.

6. **Criminal Law § 114.2— State's contentions—no expression of opinion in instructions**

The trial court did not express an opinion in stating to the jury that "the state says and contends that when you weigh and consider all of the evidence in this case that you should have no doubt in your mind but that this defendant is guilty of first degree murder" and that "the state says and contends that he is the aggressor all the way. That he started the whole thing," since the jury could not have understood the statement to be an opinion of the judge regarding the facts of the case, and could only have understood that the judge was simply recounting the State's contentions.

7. **Criminal Law §§ 86.2, 86.6— prior inconsistent statement—prior convictions—cross-examination for impeachment proper**

Defendant who testified in his own behalf could properly be cross-examined concerning a prior inconsistent statement, a knifing incident which resulted in a conviction of assault on a female, and another incident in which defendant was charged with rape but convicted of assault on a female, the question with respect to rape being proper since defendant could have in fact raped the victim, but have been convicted only of the lesser offense of assault on a female; furthermore, failure of the court to limit consideration of the evidence solely for impeachment purposes was not reversible error where defendant did not request such limiting instruction.

Justice BROCK took no part in the consideration or decision of this case.

Justice EXUM dissenting in part.

APPEAL by defendant from *Crissman, J.* at the 27 November 1978 Criminal Session of GUILFORD County Superior Court.

The defendant was charged in an indictment, proper in form, with first degree murder in the death of Michael Johnny Conwell. The evidence for the State tended to show the following:

At approximately 9:30 p.m. on 8 September 1978, the defendant met Carolyn Royal and Felicia Hazlip at a fish market on Florida Street in Greensboro. Royal got in the defendant's car and the two went to the Caldcleugh Recreation Center. Hazlip walked the few blocks to the Center. The defendant parked his car in the parking lot in front of the Center, and he and Royal

talked for a few minutes. Then, as Royal was leaving, the defendant asked her to call two girls, Josie Crosby and Angela Jones, to the car. When they went over to the car, Crosby asked him to take them to her niece's house and he agreed to do so. The girls got into the car about 9:45 p.m. The Center had closed at 9:30 p.m., but there were still several people standing around the parking lot and seated on the front steps of the Center, including the deceased Johnny Conwell.

As the defendant was preparing to leave the Center, he pulled out his .22 caliber pistol from the waistband of his pants and fired a shot that went through the front window of the Center. Conwell yelled something to the defendant to the effect that he could get hurt playing around like that. Defendant stopped his car and got out with his pistol in his hand. Conwell picked up a soft drink bottle and stood on the steps with the bottle down by his side. Sometime after firing the first shot defendant made the statement, "When I pull my stuff out, I don't pull it out for nothing." Defendant walked up the steps to Conwell and shot him once in the head. Conwell did not raise the bottle at any time, nor did he threaten the defendant verbally or physically.

There was a stipulation entered at trial that Conwell died from a gunshot wound to the head and that in the opinion of Dr. Page Hudson, Chief Medical Examiner for North Carolina, the gun was within one foot of Conwell's head at the time of the fatal injury. After the shooting, the defendant got in his car and drove away alone. He was apprehended by police early the next morning at his apartment.

The evidence for the defendant tended to show the following:

Defendant testified that while he and Royal were in his car at the Center, Chubby Chestnutt came up to the car and wanted to borrow the pistol that he and the defendant owned together. The defendant told Chestnutt that he did not have the pistol with him and Chestnutt walked away and sat on the side of a small hill by the Center. Then, as Royal was leaving, the defendant had her call two girls to his car. One of the girls asked him to take them somewhere and he agreed to do so. They got in and he backed up about twenty feet.

Defendant then pulled out his pistol and while playing with it, fired it into the air. Since defendant did not want the gun in his car in the event the police were called, he got out and started walking toward Chestnutt to give the gun to him.

Conwell was sitting on the steps fifteen to twenty feet to the defendant's left. Conwell stood up, picked up a bottle and yelled several profane statements to the defendant. He told the defendant that he was going to kill him, and he walked toward him, raising the bottle as if he planned to strike him. Defendant told him to halt and to put the bottle down and then backed up and fired a warning shot over his head. Conwell continued advancing toward the defendant, told him again he was going to kill him, and struck the defendant's hand. Defendant then shot him. Testimony by one of the State's witnesses tended to corroborate defendant's testimony that a total of three shots were fired rather than two.

The jury found the defendant guilty of second degree murder. He was sentenced to imprisonment for not less than forty years nor more than life.

*Public Defender Wallace C. Harrelson for the defendant.*

*Attorney General Rufus L. Edmisten by Assistant Attorney General Marvin Schiller for the State.*

COPELAND, Justice.

[1]   Defendant assigns as error the trial judge's denial of his motions for directed verdict at the close of the State's evidence and at the close of all the evidence. Defendant's brief sets out no reason or argument and cites no authority in support of this assignment of error; therefore, it is deemed abandoned. Rule 28(a), (b)(3), Rules of Appellate Procedure; *State v. Anderson*, 281 N.C. 261, 188 S.E. 2d 336 (1972).

In any event, due to the seriousness of the charge and conviction in this case, we have examined the record carefully and find that there is ample evidence, when considered in the light most favorable to the State, to support a conviction of second degree murder. The State's evidence tends to show that the defendant approached the deceased and shot him at close range after the defendant had fired a shot through the window of the Center and

deceased had yelled to him that he could get hurt playing around like that. There is evidence in the record that the deceased never raised the bottle he was holding and never approached the defendant as if he were going to harm him. Therefore, defendant's motions for directed verdict were properly denied.

Defendant raises two contentions concerning the following portion of the trial judge's charge to the jury on the definition of self-defense: "and third, that the defendant was not the aggressor if the defendant voluntarily and without provocation entered the fight. He was the aggressor."

First, defendant contends that in making the above statement the trial judge was impermissibly placing the burden of proving self-defense on the defendant. However, it is clear that at that point in his charge the trial judge was *defining* self-defense. Immediately after defining self-defense, the trial judge *then* charged with respect to the burden of proof on the self-defense issue as follows: "Now, members of the jury, the burden is on the State to prove beyond a reasonable doubt that the defendant did not act in self-defense."

In *State v. Potter*, 295 N.C. 126, 244 S.E. 2d 397 (1978), we held that it was error to tell the jury that it must find beyond a reasonable doubt that the defendant was not the aggressor. The burden is upon the State to prove beyond a reasonable doubt that the defendant did not act in self-defense when there is some evidence in the case that he did. *State v. Hankerson*, 288 N.C. 632, 220 S.E. 2d 575 (1975), *rev'd on other grounds*, 432 U.S. 233 (1977).

However, we also held in *Potter* that,

"It would have been proper . . . to tell the jury that the killing . . . would be excused altogether as being in self-defense if:

(1) it appeared to defendant and he believed it to be necessary to shoot [the deceased] in order to save himself from death or great bodily harm . . . ; *and*

(2) defendant's belief was reasonable in that the circumstances as they appeared to him at the time were suffi-

cient to create such a belief in the mind of a person of ordinary firmness . . . ; *and*

(3) *defendant was not the aggressor* in bringing on the affray, defining what is meant by this term . . . ; *and*

(4) defendant did not use excessive force, defining what is meant by this term. . . ." *State v. Potter, supra* at 142-43, 244 S.E. 2d at 408. (Citations omitted.) (Emphasis added.)

[2]   When charging on self-defense, a trial judge must correctly define the term self-defense, *State v. Potter, supra; State v. Wynn,* 278 N.C. 513, 180 S.E. 2d 135 (1971), and must place the burden on the State to disprove self-defense beyond a reasonable doubt, *State v. Hankerson, supra.* In the instant case, the trial judge performed both tasks in compliance with our decision in *Potter* and we find no merit in this assignment or error.

[3]   Second, the defendant contends that the trial judge expressed an opinion in stating that, "He was the aggressor." In essence the defendant is alleging error in the court reporter's punctuation of the judge's charge. Such an allegation, standing alone, is not sufficient to warrant a new trial. *State v. Jarrette,* 284 N.C. 625, 202 S.E. 2d 721 (1974), *death sentence vacated,* 428 U.S. 903 (1976).

The State has moved to amend the record as follows: "and third, that the defendant was not the aggressor. If the defendant voluntarily and without provocation entered the fight, he was the aggressor."

We held in *Potter* that when the jury is instructed that the third requirement of self-defense is that the defendant not be the aggressor, the jury should have the term "aggressor" defined for them. In this connection, the pattern jury instructions provide the following definition: "If he voluntarily and without provocation entered the fight, he was the aggressor." NC.P.I.—Crim. 206.10, Page 7. In the instant case, the trial judge used those exact words in his charge to the jury. Obviously, the punctuation of the court reporter was in error. Therefore, the State's motion to amend the record is allowed so that the above sentence is punctuated the same as the pattern jury instructions.

A trial judge cannot express an opinion on the evidence in the presence of the jury at any stage of the trial. G.S. 15A-1222;

G.S. 15A-1232. Those two provisions repealed and replaced G.S. 1-180 effective 1 July 1978. The new provisions restate the substance of G.S. 1-180 and the law remains essentially unchanged. *State v. Hewett*, 295 N.C. 640, 247 S.E. 2d 886 (1978). At this point in the charge it is obvious that the trial judge expressed no opinion. He was defining the term "aggressor" for the jury as he should have done and committed no error in doing so.

[4] Defendant assigns as error the following portion of the trial judge's charge on self-defense:

> "If the State has failed to satisfy you behind [sic] a reasonable doubt that the defendant did not reasonably believe under the circumstances *as they existed* at the time of the killing that he was about to suffer death or serious bodily harm or bodily injury at the hands of Johnny Conwell, or that the defendant used more force than reasonably appeared to him to be necessary, and third, that the defendant was the aggressor then the killing of Johnny Conwell by the defendant would be justified on the grounds of self-defense then it would be your duty to return a verdict of not guilty." (Emphasis added.)

> Defendant contends that use of the phrase "as they existed" rather than "as they appeared" denied him the full benefit of a jury instruction that he had the right to defend himself under circumstances of apparent necessity as well as real or actual necessity.

> It is true, as defendant contends, that in the exercise of his lawful right of self-defense, an accused may use such force as is necessary or apparently necessary to protect himself from death or serious bodily harm. *State v. Davis*, 289 N.C. 500, 223 S.E. 2d 296, *death sentence vacated*, 429 U.S. 809 (1976); *State v. Fowler*, 250 N.C. 595, 108 S.E. 2d 892 (1959). The doctrine of apparent necessity means that a person may kill if he reasonably believes it to be necessary to do so in order to avoid death or serious bodily harm, even though it is not actually necessary to kill. *State v. Goode*, 249 N.C. 632, 107 S.E. 2d 70 (1959); *State v. Rawley*, 237 N.C. 233, 74 S.E. 2d 620 (1953). The reasonableness of his belief is to be determined by the jury from the facts and circumstances as they appeared to the defendant at the time of the killing. *State v.*

*Marsh,* 293 N.C. 353, 237 S.E. 2d 745 (1977); *State v. Kirby,* 273 N.C. 306, 160 S.E. 2d 24 (1968).

Elsewhere in his charge, the trial judge instructed the jury as follows:

> "Now, members of the jury, a killing would be excused entirely on the ground of self-defense. First, if it appeared to the defendant and he believed it to be necessary to shoot Johnny Conwell in order [to] save himself from death or great bodily harm; and second, the circumstances as they appear [sic] to the defendant at the time were sufficient to create such a belief in the mind of a person of ordinary firmness. It is for you, members of the jury, to determine the reasonableness of the defendant's belief from the circumstances as they appeared to him at the time. In making this determination you should consider the circumstances as you find them to have existed from the evidence that the fierceness of the assault, if there was any upon the defendant, and whether or not Johnny Conwell had any sort of weapon in his possession. . . ."

This instruction is in accord with the law and afforded the defendant the full benefit of the doctrine of apparent necessity. *State v. Jackson,* 284 N.C. 383, 200 S.E. 2d 596 (1973); *State v. Gladden,* 279 N.C. 566, 184 S.E. 2d 249 (1971). Under the same circumstances, Justice Huskins, quoting former Chief Justice Bobbitt, said that defendant's contention "relates more to semantics than to substance." *State v. Jackson, supra* at 391, 200 S.E. 2d at 601, *quoting State v. Gladden, supra* at 572, 184 S.E. 2d at 253. Thus, this assignment of error is overruled.

[5]   The defendant contends that the trial judge impermissibly expressed an opinion concerning the credibility of the defendant's testimony and the testimony of Mr. Robert Gray, a defense witness. At several points during defendant's testimony, the trial judge admonished the defendant to answer the questions asked by the district attorney, to not talk back, and to refrain from arguing with the district attorney. At one point in Gray's testimony, the trial judge instructed him to answer the question and not to argue with the district attorney.

The rule against the expression of opinions by the trial judge in the presence of the jury includes the prohibition against the expression of an opinion about the witness or his credibility. *State v. Belk,* 268 N.C. 320, 150 S.E. 2d 481 (1966). However, it is proper for the trial judge to admonish a witness to give responsive answers to questions asked of him, *State v. Greene,* 285 N.C. 482, 206 S.E. 2d 229 (1974); to admonish the witness not to argue with the prosecutor but to answer the questions asked of him, *State v. Lentz,* 270 N.C. 122, 153 S.E. 2d 864, *cert. denied,* 389 U.S. 866 (1967); and to admonish the defendant and his witness to confine their responses to the questions asked, *State v. Chandler,* 30 N.C. App. 646, 228 S.E. 2d 69 (1976). *See also,* 88 C.J.S. Trial § 49(3) (1955).

A trial judge has the duty to control the examination of witnesses in the interest of an efficient administration of justice so long as he intimates no opinion either of the witness or his credibility. *State v. Frazier,* 278 N.C. 458, 180 S.E. 2d 128 (1971); *State v. Mansell,* 192 N.C. 20, 133 S.E. 190 (1926). We hold that the trial judge properly performed this duty and expressed no opinions at these points in the record. This assignment of error is overruled.

[6] The defendant contends that the court expressed an opinion in stating to the jury that, "the state says and contends that when you weigh and consider all of the evidence in this case that you should have *no doubt* in your mind, but that this defendant is guilty of first degree murder" and that, "the state says and contends that he is the aggressor *all the way*. That he started the whole thing." (Emphasis added.)

This assignment is without merit. The instruction clearly reveals that the judge was simply recounting the State's contentions. This was made quite clear to the jury by the trial judge; therefore, the jury could not have understood the statement to be an opinion by the judge regarding the facts of the case. *State v. Abernathy,* 295 N.C. 147, 244 S.E. 2d 373 (1978). The jury was instructed that it was their duty to weigh and consider all the evidence. We find no expression of an opinion in the above statements of the trial judge.

[7] Defendant assigns as error a series of questions asked of him on cross-examination by the district attorney. Defendant contends

that questions put to him concerning a prior statement he made to the police that he did not own a pistol and questions regarding his two convictions for assault on a female exceeded the proper boundaries. of cross-examination. We find no merit in this assignment.

When a defendant becomes a witness and testifies in his own behalf, he is subject to cross-examination like any other witness, G.S. 8-54, and, for purposes of impeachment, he may be cross-examined by the district attorney concerning prior inconsistent statements, *State v. Jones*, 294 N.C. 642, 243 S.E. 2d 118 (1978), *State v. Battle*, 269 N.C. 292, 152 S.E. 2d 191 (1967); prior convictions, *State v. Monk*, 286 N.C. 509, 212 S.E. 2d 125 (1975), *State v. Wright*, 282 N.C. 364, 192 S.E. 2d 818 (1972), *State v. Miller*, 281 N.C. 70, 187 S.E. 2d 729 (1972); and any specific acts of misconduct which tend to impeach his character, *State v. Purcell*, 296 N.C. 728, 252 S.E. 2d 772 (1979), *State v. McKenna*, 289 N.C. 668, 224 S.E. 2d 537, *death sentence vacated*, 429 U.S. 912 (1976), *State v. Hartsell*, 272 N.C. 710, 158 S.E. 2d 785 (1968). *See also*, 4 Strong's N.C. Index 3d, Criminal Law §§ 86.1-86.7; 1 Stansbury's N.C. Evid. §§ 46, 111-112 (Brandis Rev. 1973).

Here, the district attorney cross-examined the defendant concerning his prior statement to police that he did not own a pistol after he had testified on direct examination that he and Chubby Chestnutt jointly owned a .22 caliber pistol. There was no error in this line of questioning. The district attorney properly questioned the defendant concerning a prior inconsistent statement. *State v. Jones, supra; State v. Battle, supra.*

The defendant was asked if he had cut Carolyn Woodhite with a butcher knife on 22 May 1972. He replied that she pulled the knife on him, he knocked it out of her hand, and he was convicted of assault on a female. There was no error in asking defendant about this prior instance of misconduct. *State v. Black*, 283 N.C. 344, 196 S.E. 2d 225 (1973).

In a separate incident, defendant was charged with the rape of Virginia Pearson on 8 August 1978 in Richmond, Virginia. He was convicted of assault on a female. The district attorney may not ask about or refer in his question to prior arrests, indictments, charges or accusations. *State v. Williams*, 279 N.C. 663, 185 S.E. 2d 174 (1971). Therefore, the trial judge properly sustain-

ed defense counsel's objection to the district attorney's reference in one question to "this charge of rape." However, it was permissible for the district attorney to ask the defendant if he had in fact raped Virginia Pearson since such question concerned a specific act of misconduct. *State v. Mack,* 282 N.C. 334, 193 S.E. 2d 71 (1972); *State v. Gainey,* 280 N.C. 366, 185 S.E. 2d 874 (1972).

Questions regarding specific acts of misconduct must be asked in good faith. *State v. Mack,. supra.* Here, the question was asked in good faith because the district attorney's information was that the defendant had been charged with the rape of Virginia Pearson. *State v. Lowery,* 286 N.C. 698, 213 S.E. 2d 255 (1975), *death sentence vacated,* 428 U.S. 902 (1976). This remains true even though he was actually convicted only of assault on a female in that case and not rape. *See generally,* 1 Stansbury's N.C. Evid. § 111, n. 12 (Brandis Rev.) (Cum. Supp. 1979) and cases cited therein. The defendant could still have in fact raped Virginia Pearson. The question properly concerned a matter within the knowledge of the witness. *State v. Williams, supra.*

It was also proper for the district attorney to ask the defendant if he had been convicted of assault on a female in this same incident. In *State v. Mack, supra,* we held that it was permissible for the district attorney to phrase his questions as specific acts of misconduct rather than as prior convictions even though defendant had been convicted of those offenses. In *State v. Mason,* 295 N.C. 584, 248 S.E. 2d 241 (1978) and *State v. Ross,* 295 N.C. 488, 246 S.E. 2d 780 (1978), we held that cross-examination for purposes of impeachment is not limited to questions concerning prior convictions, but extends to questions relating to specific acts of criminal and degrading conduct for which there have been no convictions.

Here, there was no conviction for rape. There was a conviction for assault on a female. We hold that it was proper for the district attorney to question the defendant about both aspects of this incident. Defendant could have in fact raped Virginia Pearson, but have been convicted only of the lesser offense of assault on a female. Therefore, both questions were proper.

The district attorney was persistent during this line of questioning in the face of evasive and equivocal answers from the defendant. It is not error to permit the district attorney to pursue

the cross-examination and "sift the witness" in such situations. *State v. Fountain*, 282 N.C. 58, 191 S.E. 2d 674 (1972). Whether the cross-examination goes too far or is unfair is a matter resting within the sound discretion of the trial judge, *State v. Black, supra; State v. Williams, supra; State v. Blackwell,* 276 N.C. 714, 174 S.E. 2d 534, *cert. denied,* 400 U.S. 946 (1970), and we find no abuse of discretion in this case.

When a defendant has testified, but has not otherwise placed his character in issue, evidence concerning prior inconsistent statements, prior convictions, and specific acts of misconduct is competent only for purposes of impeachment and not as substantive evidence of guilt. 1 Stansbury's N.C. Evid. § 108 (Brandis Rev. 1973). Here, the defendant did not ask for and the trial judge did not give a limiting instruction during this questioning to consider the evidence solely for impeachment purposes. When the defendant does not request such a limiting instruction, it is not reversible error on appeal if the limiting instruction is not given. *State v. Watson,* 294 N.C. 159, 240 S.E. 2d 440 (1978); *State v. Brower,* 289 N.C. 644, 224 S.E. 2d 551 (1976); *State v. Williams,* 272 N.C. 273, 158 S.E. 2d 85 (1967). This assignment of error is overruled.

The defendant has had a fair trial free from prejudicial error. Thus, the verdict and judgment of the court below will not be disturbed and we find

No error.

Justice BROCK took no part in the consideration or decision of this case.

Justice EXUM dissenting in part:

I disagree only with that portion of the majority's opinion holding that it is permissible to cross-examine a witness about alleged crimes for which the witness has been tried and acquitted. The majority relies on the rule that a witness may be asked about prior acts of misconduct for purposes of impeachment. This rule has no application where such acts have been the subject of a criminal prosecution which terminated favorably to the defendant. *State v. Sharratt,* 29 N.C. App. 199, 223 S.E. 2d 906 (1976), *cert. denied,* 290 N.C. 554, 226 S.E. 2d 512 (1976).

This kind of cross-examination is tantamount to asking the witness about past accusations of crime, a practice which was prohibited in *State v. Williams*, 279 N.C. 663, 185 S.E. 2d 174 (1971).

When one has been tried for and acquitted of a particular crime that should end the matter for all purposes. A person so acquitted should not be required continually to defend himself against the charge in subsequent criminal proceedings in which he may become involved.

Nevertheless I concur in the result reached by the majority in this case on the ground that the questions asked by the district attorney, albeit improper, were not so prejudicial as to require a new trial. The charge here was for homicide. Questions on cross-examination related to an alleged rape. Further, the defendant appropriately explained to the jury that he did not rape Virginia Pearson and that he had been acquitted of that charge.