823 F.2d 546
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Kevin Derek BROWN, Plaintiff-Appellant,
v.
E. C. WATKINS, Superintendent; Attorney General of North
Carolina, Defendant-Appellee.
 No. 86-7136
 United States Court of Appeals, Fourth Circuit.
 Argued April 9, 1987.
Decided July 6, 1987.
 
 Patrick Michael Donley (Brumbaugh, Donley & Mu, on brief), for appellant.
 Richard Norwood League, Special Deputy Attorney General (Lacy H. Thornburg, Attorney General of North Carolina, on brief), for appellees.
 Before PHILLIPS, and CHAPMAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 CHAPMAN, Circuit Judge:
 
 
 1
 Kevin Brown was convicted in the North Carolina Superior Court of second degree rape and first degree kidnapping. After exhausting his state remedies, he petitioned for the Great Writ claiming that he had been denied a fair trial because the state prosecutor was allowed to question him about two other rape charges that had been brought against him, neither of which resulted in a conviction, and because the trial judge unfairly restricted the appellant's testimony about his conversation with the prosecutrix. He appeals the district court's denial of his habeas corpus petition, and we affirm.
 
 I.
 
 2
 The testimony of the prosecutrix conflicted sharply with that of the appellant. She testified that she had gotten off work at 10:00 p.m. and was driving her automobile to her home when she noticed headlights flashing in her review mirror. Upon reaching home she stopped in her driveway, got out of her car and walked back to the car behind her, thinking it was a girlfriend. Appellant Brown, whom she stated she did not know, was in the car and advised her that he was a narcotics agent and that she was driving a car that had been reported stolen. He also stated she was suspected of dealing in narcotics and she would have to accompany him to the police station. She advised Brown that the car belonged to her, that it had not been stolen, and that she had a license and registration for it. He still insisted that she go to the police station with him. She drove her car and he followed until he directed her to stop in the parking lot of a store. He then got out and asked her for license and registration, but he did not show her any identification of his own. He advised her to wait in the parking lot until he went into the police station and cleared things up. She waited a while and he returned and got into her car and directed that she drive toward the police station. Brown then told her that he had a gun and that she was to do what she was told. They drove to a secluded area and he told her to take off her pants. During this time Brown kept holding his side as if he had a gun. The prosecutrix pleaded with him to leave her alone and she told him that she was pregnant. Appellant grabbed her hand and twisted it until she thought her fingers were broken, and then he hit her in the mouth and raped her. Afterwards Brown attempted to drive away, but the car became stuck in the mud. He took the car keys and departed on foot. The prosecutrix walked to the nearby store and called the police and reported the rape.
 
 
 3
 The state called a forensic chemist who analyzed hairs taken from the persons of the prosecutrix and the appellant and testified that a public hair found on the prosecutrix was microscopically consistent with appellant's hair. Detective Bostic testified that Brown had approached his car on the night in question and told him that he had been mugged and his car had been stolen. Bostic took Brown to the police department, but Brown left shortly thereafter. When the prosecutrix reported the rape, her description of her assailant was similar to that of Brown. Shortly thereafter Brown was picked up and taken into custody and immediately identified by the prosecutrix as the man who had raped her.
 
 
 4
 The appellant's testimony was that he had known the prosecutrix before the night in question and had engaged in sexual intercourse with her previously. He testified that on the night of the alleged offense he saw the prosecutrix in a grocery store and she asked if they could get together and talk. He met her after she got off work and they got into her car because he was low on gas. They drove to a secluded area and she asked him for money for an abortion, but he refused to give her any, because he was not the father of her expected child. He stated that she tried to leave but her car got stuck in the mud and he opened the door and asked if he could drive, but she refused. He became angry and slammed the door in her face and this caused the cut on her lip. He left the scene and walked away. Upon flagging down an approaching vehicle, he realized that it was a police car with a white officer driving, so he made up the story about being mugged.
 
 
 5
 Prior to the trial appellant's counsel was aware that Brown had previously been charged with rape in a North Carolina state court and that he had been tried for rape in a military court and found not guilty. Appellant's counsel asked the trial judge to permit a voir dire examination of the state prosecutor to determine if the prosecutor had a good faith belief that Brown had committed the two prior acts. This motion was denied. The prosecutor had previously advised the court of the basis of his good faith belief as to the prior acts about which he questioned the appellant.
 
 
 6
 While Brown was testifying he stated that the prosecutrix had told him that she had been mistreated, that she was pregnant and that she did not know who was the father of her expected child. There was an objection by the state and an in camera hearing under North Carolina's then applicable Rape Shield law, N.C.Gen.Stat. Sec. 8-58.6 (repealed effective July 1, 1984 by Session Laws 1983, c. 1037, s.9). The trial judge ruled that testimony of a possible abortion was permissible, but that appellant could not testify that the prosecutrix did not know by whom she became pregnant. It was already in evidence that the prosecuting witness was pregnant and unmarried. No other restrictions were placed on the appellant's testimony.
 
 II.
 
 7
 Under North Carolina law a witness may be cross-examined as to prior acts for the purpose of impeachment. State v. Neal, 222 N.C. 546, 23 S.E.2d 911 (1943); State v. Williams, 279 N.C. 663, 185 S.E.2d 174 (1971); State v, Gainey, 280 N.C. 366, 185 S.E.2d 874 (1972). North Carolina has adopted two limitations on its general rule: (1) the questioning must be in good faith, State v. Mack, 282 N.C. 334, 193 S.E.2d 71 (1972); and (2) the cross-examiner is bound by the witnesses's answer, and he cannot offer extrinsic evidence in rebuttal. State v. Cross, 284 N.C. 174, 200 S.E.2d 27 (1973).
 
 On cross-examination the prosecutor asked:
 
 8
 Q. Kevin Derrick Brown, Sr., isn't it true that in the early morning hours of the 31st of August 1980 in Room 111 of the Town House Motor Lodge in Jacksonville, North Carolina, that you raped PFC Tina Termin?
 
 
 9
 A. No, sir. No, sir.
 
 
 10
 Q. Kevin Derrick Brown, Sr., isn't it true that on the 16th day of May, 1981, in the early morning hours at 1365 Butler Drive in Midway Park, North Carolina in the house next door to the house that you then lived in that you attempted to rape Judy Lynn Smalls?
 
 
 11
 A. No, sir.
 
 
 12
 Brown was tried before a military court on the charge of raping PFC Termin and found not guilty. The charge of attempting to rape Judy Lynn Smalls was brought in a North Carolina state court and was dismissed before trial because the prosecutrix stated no rape had occurred.
 
 
 13
 At the hearing on the motion in limine to prevent these questions from being asked Brown's attorney insisted on the right to a voir dire examination of the prosecutor on the issue of good faith. This motion was denied, but the prosecutor made the following statement:
 
 
 14
 If your honor please, I do not mind stating for Your Honor or for Counsel what good faith basis is. I am not aware or as aware of the Uniform Code of Military Justice as Mr. Donley undoubtedly is but I submit it would be a rather unusual military or [sic] court that had twelve people deciding the defendant's guilt or innocence. Nevertheless, I have spoken with one of the members of that Court. His name is Lt. Bennett. He is no longer stationed at Camp Lejeune. I have spoken with the Assistant Prosecutor who handled the civilian case against the defendant approximately a year and a half ago. I have examined the case file and the officer's reports and investigative sheets from the incident at the Town House Motor Lodge on August 31, 1980.
 
 
 15
 I have examined the Article 32 transcript of the defendant's court martial, and if your Honor please, based on the evidence that I have seen in those two case files, I submit that this defendant, No. 1, may very well have raped Judy Lynn Small on the 17th of May, 1981, and he may very well have raped PFC Tina Termin [sic] on the 31st of August, 1980. He may answer those questions as he will and the jury may assign to his answers such credibility as they desire, but if your Honor please, I respectfully submit that the cases of State v. Herbin in 298 and State v. Shane in 304 clearly permit the questions to be asked.
 
 
 16
 Brown did not ask for a charge to the jury about the prior misconduct questions and how they should be viewed by the jury. State v. Herbin, 298 N.C. 441, 259 S.E.2d 263 (1979) was a murder case and the court found that when a defendant becomes a witness and testifies in his own behalf, he is subject to cross-examination like any other witness and, for the purposes of impeachment, he may be cross-examined concerning prior inconsistent statements, prior convictions, and any specific acts of misconduct which tend to impeach him.
 
 
 17
 State v. Shane, 304 N.C. 643, 285 S.E.2d 813 (1982) held that a criminal defendant may be cross-examined about prior acts of misconduct, even if he was not convicted therefore, for the purpose of impeachment, provided the questions are asked in good faith.
 
 
 18
 Appellant contends that his attorney should have been allowed to cross-examine the state prosecutor on the issue of the good faith basis for the questions regarding the prior charges against Brown. He asserts that without such cross-examination he was not in a position to show bad faith.
 
 
 19
 In Lisenba v. California, 314 U.S. 219 (1941) the Court held that the Fourteenth Amendment left the states free to adopt rules as to relevant evidence, and that such rules could allow the admission of evidence as to similar but disconnected acts to establish intent. North Carolina allows such questions subject to the good faith limitation and the condition that the witnesses' answer must be accepted and may not be attacked.
 
 
 20
 Appellant relies upon Watkins v. Foster, 570 F.2d 501 (4th Cir. 1978) which held that a state prosecutor had not acted in good faith in questioning a criminal defendant about six alleged prior offenses for which he had been indicted, when the prosecutor knew that one of the indictments had already been dismissed and that the five other indictments were dismissed for insufficient evidence shortly thereafter. All of these indictments were obtained by the prosecutor examining Foster. The record in that case showed that the defendant had repeatedly requested preliminary hearings on the charges and these hearings had not been held. The only evidence against Foster was his fingerprint found on a flower pot found in the home he was charged with burglarizing. The court viewed the scarcity of evidence as relevant to the issue of whether the prosecutor's improper cross-examination was so prejudicial as to deprive Foster of a fair trial. In the present case there is an abundance of evidence against Brown and the prosecutor made a showing of good faith in his statement to the court as to what actions he had taken investigating the prior charges and his conclusions in connection therewith.
 
 
 21
 Evidence of prior misconduct is admissible for any valid reason other than showing that a defendant is of poor character and therefore likely to act in conformity with this character in connection with the present charge against him.
 
 
 22
 Our court has admitted evidence of other crimes or misconduct not resulting in conviction. See United State v. Tibetts, 565 F.2d 867 (4th Cir. 1977), evidence of a prior bomb threat; United States v. Woods, 484 F.2d 127 (4th Cir. 1973), evidence of prior infant deaths; United States v. Smith, 446 F.2d 200 (4th Cir. 1971), negotiation of another stolen postal money order.
 
 
 23
 In the present case the trial judge found that the questions were asked by the prosecutor in good faith. Under the facts in this case we cannot say that the state judge's finding of good faith was error, or if error, that it is of constitutional dimension. The evidence against Brown was quite strong. The testimony of the prosecutrix was supported by her prompt report to police, her distraught condition at the time, the finding of a public hair similar to defendant's, semen in the vagina of the prosecutrix and her identification of Brown at the police station when he was apprehended shortly after the attack. The state's case was strengthened by Brown's testimony and conduct. He claimed that he had been mugged and his car stolen, but he made no formal report of this after being taken to the police station. His car was found with his wallet undisturbed therein. The trial judge complied with a North Carolina rule and made the finding of good faith prior to permitting the two questions to be asked to the appellant. We cannot say that appellant had a constitutional right to cross-examine the prosecutor on his good faith statement.
 
 III.
 
 24
 Appellant contends that his constitutional rights were violated because he was not allowed to testify that the prosecutrix had advised him that she was pregnant and did not know who had fathered her expected child. He contends that this was relevant to the kidnapping charge because it would show why he and the prosecutrix were together. He testified that she had asked him to meet with her and then she explained that she was pregnant, she did not know the father of the child, that she wanted money for an abortion and sought appellant's advice. All of these points were testified to, except the lack of knowledge as to the father of the child, and this was sufficiently covered by testimony that the prosecutrix was pregnant and unmarried. We do not find that the trial judge's exclusion of this one question because of his interpretation of the North Carolina Rape Shield Law resulted in an unconstitutionally unfair trial.
 
 
 25
 Before its repeal, N.C.Gen.Stat. 8-58.6(b) prevented the introduction of evidence as to the sexual behavior of the complainant in a rape case unless the trial judge found the evidence to be relevant and to come within one of the exceptions set forth in the Rape Shield Law. By sustaining the objection to the qeustion as to the parentage of the fetus, the trial judge found this evidence to be shielded by North Carolina Law and we do not find that appellant was constitutionally perjudiced thereby.
 
 
 26
 AFFIRMED.